## HORMEL *v.* HELVERING, COMMISSIONER OF INTERNAL REVENUE.

No. 257.   Argued March 3, 1941.—Decided March 17, 1941.

*Messrs. George M. Wolfson* and *R. C. Alderson* for petitioner.

*Assistant Attorney General Clark,* with whom *Solicitor General Biddle* and *Messrs. Sewall Key, L. W. Post,* and *William L. Cary* were on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

The Commissioner of Internal Revenue assessed a deficiency against petitioner for failure to include in his 1934 and 1935 tax returns the income of three separate trusts declared by him in 1934. Each of the declarations of trust recited that the beneficiaries were "Jay C. Hormel [petitioner himself], and Germaine D. Hormel, his wife, as guardian for their son," a different son being designated by each trust instrument. Each trust estate consisted of shares of stock in Geo. A. Hormel & Co., of which petitioner was an officer. Petitioner named himself and another as co-trustees; all dividends from each trust estate, up to $2000 a year, were to be paid to petitioner's wife as guardian for the son named in the particular trust instrument, and any excess over $2000 was to be paid to petitioner; the trusts were to expire automatically after three years, or upon the death of petitioner, or upon the death of the named son, whichever event should occur first; upon expiration of each trust, the entire principal should be the property of petitioner, his legatees, devisees, or heirs; petitioner and his wife (as guardian) had the power to remove petitioner's co-trustee at any time, and to choose a successor; the co-trustees could appoint proxies to exercise voting rights over the shares of stock making up the trust estates, and could sell the securities deposited and substitute others; it was provided that no title to the trust estates should vest in petitioner's wife, as guardian, or in his sons, and it was further provided that the wife and sons should have no power "to sell, transfer, encumber or in any manner anticipate or dispose of any

interest in the trust estate"; and, finally, the trust instruments stated that the co-trustees were to be responsible for loss only upon wilful and deliberate violations of their duties.

All of the trust income for the years in question was distributed to petitioner's wife as guardian, who reported it to the federal government as guardianship income. Petitioner, in his individual returns, did not include it. The Commissioner, taking the position that petitioner should have included the trust income in his individual returns, assessed a deficiency against him, asserting that the trusts were "revocable" and the income therefore petitioner's within the meaning of § 166 of the Revenue Act of 1934.[1] The Board of Tax Appeals decided against the Commissioner, holding that the income in question was taxable to petitioner neither under § 166 nor 167,[2] the two sections expressly relied on by the Commissioner before the Board. In the Circuit Court of Appeals, the Commissioner abandoned reliance on § 166, urged that the Board was in error as to taxability under § 167, and

---

[1] "Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor."

[2] Section 167 reads in part as follows: "(a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; . . ."

argued that in any event the income was taxable to petitioner under § 22 (a).[3] The taxpayer argued that the applicability of § 22 (a) was not open for consideration, inasmuch as that section had not been relied on before the Board. The Circuit Court of Appeals, though agreeing with the Board as to non-taxability under §§ 166 and 167, nevertheless ruled that § 22 (a) could properly be considered, and held the income taxable to petitioner under that section. Because of a conflict among the Circuit Courts of Appeals on the propriety of considering § 22 (a) under these circumstances,[4] we granted certiorari. 311 U. S. 626. Two questions are presented for our decision: First, Was the court below correct in holding that § 22 (a) should be considered? Second, If so, was the court below justified in determining that the income of these trusts was taxable to petitioner under § 22 (a)?

Petitioner in effect challenges the power of the Circuit Court of Appeals to pass upon any questions other than those which were directly and squarely presented in the proceedings before the Board of Tax Appeals. That court's authority to review decisions of the Board rests on statutes, which provide in part that the Circuit Courts of Appeals "have power to affirm or, if the decision of the Board is not in accordance with law, to modify or to reverse the decision of the Board, with or without

---

[3] " 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. . . ."

[4] Cf., e. g., *Helvering* v. *Hormel*, 111 F. 2d 1 (the decision below), with *Helvering* v. *Richter*, 114 F. 2d 452, reversed, *post*, p. 561.

remanding the case for a rehearing, as justice may require." 26 U. S. C. § 1141 (c) (1) (Supp. 1939). In general, it is the function of the Board to determine the facts of a tax controversy on issues raised before it and to apply the law to those facts; and it is the function of the reviewing court to decide whether the Board has applied the correct rule of law.[5]

Ordinarily an appellate court does not give consideration to issues not raised below. For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact. This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence. And the basic reasons which support this general principle applicable to trial courts make it equally desirable that parties should have an opportunity to offer evidence on the general issues involved in the less formal proceedings before administrative agencies entrusted with the responsibility of fact finding. Recognition of this general principle has caused this Court to say on a number of occasions that the reviewing court should pass by, without decision, questions which were not urged before the Board of Tax Appeals. But those cases do not announce an inflexible practice as indeed they could not without

---

[5] The Board's rulings on questions of law, while not as conclusive as its findings of fact, are nevertheless persuasive, and it is desirable that a reviewing court have the benefit of such rulings. See *Helvering* v. *Wood*, 309 U. S. 344, 349; *Helvering* v. *Tex-Penn Oil Co.*, 300 U. S. 481, 498. This is true not only of the Board of Tax Appeals but of other administrative bodies as well. Cf. *Federal Trade Commission* v. *R. F. Keppel & Bro.*, 291 U. S. 304, 314.

doing violence to the statutes which give to Circuit Courts of Appeals reviewing decisions of the Board of Tax Appeals the power to modify, reverse or remand decisions not in accordance with law "as justice may require." There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below. See *Blair* v. *Oesterlein Machine Co.*, 275 U. S. 220, 225.

Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice. And examination of the cases relied upon by petitioner discloses that this Court, in following in some cases the general principle sought to be invoked here by petitioner, has been careful to point out the circumstances justifying application of the practice in the particular case. Thus, for example, we held in *Helvering* v. *Wood,* 309 U. S. 344, 348–349, that the government could not present in this Court as a wholly new issue the applicability of § 22 (a). But we there especially relied upon the fact that the government, when the case was before the Circuit Court of Appeals, had made an express waiver of any reliance upon 22 (a). In *Helvering* v. *Tex-Penn Oil Co.,* 300 U. S. 481, 498, this Court declined to consider a newly presented question, but pointed out that it had not been raised by the Commissioner either in his notice of tax deficiency, in his appearances before the Board of Tax Appeals or the Circuit Court of Appeals,

or in his petition for certiorari to this Court. And in *General Utilities & Operating Co.* v. *Helvering*, 296 U. S. 200, 206–207, though this Court said that the Circuit Court of Appeals should not have considered a contention not presented to or ruled upon by the Board of Tax Appeals, the statement was buttressed by adding that the Circuit Court of Appeals had "made an inference of fact directly in conflict with the stipulation of the parties and the findings, for which we think the record affords no support whatever. To remand the cause for further findings would be futile. The Board could not properly find anything which would assist the Commissioner's cause." The plain implication of that decision was that the cause would have been remanded to the Board of Tax Appeals had the Court considered the newly raised point to be of sufficient merit. These decisions and others like them, while recognizing the desirability and existence of a general practice under which appellate courts confine themselves to the issues raised below, nevertheless do not lose sight of the fact that such appellate practice should not be applied where the obvious result would be a plain miscarriage of justice. Analogous in principle is the philosophy which underlies this Court's decisions with relation to appellate practices in other cases: those in which it has been held that a decision of the Board of Tax Appeals can be supported in the reviewing court on a new theory of law; [6] those which have been remanded because the lower courts failed to give consideration to a phase of the case involving legal theories not presented; [7] and those in which there have been judicial interpretations of existing law after decision below and pending appeal—interpretations which if

---

[6] E. g., *Helvering* v. *Gowran*, 302 U. S. 238, 246.

[7] E. g., *United States* v. *Shelby Iron Co.*, 273 U. S. 571, 579; *United States* v. *Rio Grande Dam & Irrigation Co.*, 184 U. S. 416, 423.

applied might have materially altered the result.[8]
Whether articulated or not, the philosophy underlying
the exceptions to the general practice is in accord with
the statutory authority given to courts reviewing deci-
sions of the Board of Tax Appeals—decisions not in
accordance with law should be modified, reversed or re-
versed and remanded "as justice may require."

In accordance with this principle, we are of opinion
that the court below should have given and properly
did give consideration to § 22 (a) in determining peti-
tioner's tax liability. The Commissioner urged this
point before the Circuit Court of Appeals and has
strongly presented it here. At the time the Board of
Tax Appeals made its decision in this case, we had not
yet handed down our opinion in *Helvering* v. *Clifford*,
309 U. S. 331, in which we held that under § 22 (a) the
income of certain trusts was taxable to respondent. The
Circuit Court of Appeals was of opinion that there were
no controlling distinctions between the trusts created by
petitioner in this case and those created by Clifford.
Here, as there, control over the trusts was completely in
the hands of the taxpayer and his wife. For while peti-
tioner's trust instruments showed a co-trustee acting
with petitioner, the same instruments also disclosed that
such co-trustee could be removed at any time by the
joint action of petitioner and his wife. "To hold other-
wise [i. e., that petitioner is not subject to the tax] would
be to treat the wife as a complete stranger; to let mere
formalism obscure the normal consequences of family sol-
idarity; and to force concepts of ownership to be fash-
ioned out of legal niceties which may have little or no
significance in such household arrangements." [9] As the

---

[8] E. g., *Vandenbark* v. *Owens-Illinois Glass Co.*, 311 U. S. 538, and
cases there cited.

[9] *Helvering* v. *Clifford*, 309 U. S. 331, 336–337.

record now stands we think the court below correctly concluded that the trust income was taxable to petitioner under the principles announced in the *Clifford* case. Therefore to apply here the general principle of appellate practice for which petitioner contends would result in permitting him wholly to escape payment of a tax which under the record before us he clearly owes. Thus viewed, this is exactly the type of case where application of the general practice would defeat rather than promote the ends of justice, and the court below was right in so holding.

But the Board of Tax Appeals neither found the facts nor considered the applicability of 22 (a) in the light of the *Clifford* case. Congress has entrusted the Board with exclusive authority to determine disputed facts. Under these circumstances we do not feel that petitioner should be foreclosed from all opportunity to offer evidence before the Board on this issue, however remote may be his chance to take his case out of the *Clifford* rule.[10] Accordingly, the judgment of the lower court reversing the decision of the Board of Tax Appeals is affirmed, with directions to the Board of Tax Appeals for further proceedings in accordance with this opinion.

*Affirmed.*

---

[10] In this connection petitioner pointed out in his brief before the Circuit Court of Appeals that "If any contention whatsoever had at any time been suggested or considered as to Section 22, the matter of the evidence introduced or to be introduced would have required further consideration."