**UNITED STATES v. COLLIN & GISSEL et al.**

No. 4312.

Court of Customs and Patent Appeals.

June 9, 1941.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and JACKSON, Associate Judges.

Charles D. Lawrence, Acting Asst. Atty. Gen. (Dorothy C. Bennett, Sp. Atty., of counsel, of New York City), for the United States.

Eugene R. Pickrell, of New York City, for appellee.

GARRETT, Presiding Judge.

This is an appeal by the Government from the judgment of the United States Customs Court, Third Division, affirming that of the trial judge in a reappraisement proceeding involving the dutiable value of a machine for washing beer barrels imported from Germany and entered at the port of Houston, Texas, August 10, 1934.

The local appraiser appraised the machine on the basis of cost of production, returning as the amount thereof the sum of 12,511.30 reichsmarks net, packed. Upon appeal the trial judge held United States value to be the proper dutiable value, fixing the amount of such value at $3,529.92. It is conceded

by the Government that if United States value be the proper dutiable basis, the amount so fixed is correct.

Collin & Gissel, who made the entry, appears to have been a customs brokerage firm; and the actual party in interest is an individual, Ludwig Baer in name, who was the exclusive United States selling agent of the foreign manufacturer. It is conceded that no export value existed for the machine.

It was contended by the Government below, and this seems to have been its principal contention there, that the merchandise had a foreign value, or at least that the importer failed to negative the existence of such and, therefore, it was moved and argued that the court should dismiss the importer's appeal, thus leaving the local appraiser's appraisement in effect. Before us, however, it is conceded that there is some substantial evidence to support the finding of the tribunals below that there was no foreign value. In consequence, no issue respecting foreign value is before us.

The Government brief declares: "The question here presented is whether this machine is dutiable on the basis of United States value, as defined in Section 402(e), or cost of production, as defined in Section 402(f), of the Tariff Act of 1930, 46 Stat. 709."

The statutes so named read:

"(e) *United States Value.*—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

"(f) *Cost of Production.*—For the purpose of this title the cost of production of imported merchandise shall be the sum of

"(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

"(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

"(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

"(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration,' by manufacturers, or producers n the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind."

In a reappraisement proceeding we are bound by the findings of fact below whenever there is any substantial evidence to support such findings and our concern is confined to such question or questions of law as may be presented. So, in the instant case there is no occasion for a detailed review of all the evidence.

However, the Government has presented a legal theory here which, so far as we can determine from the record, was not suggested below and, for an understanding of our decision, it seems necessary to state certain facts more elaborately than either the trial judge or the appellate division had occasion to state them. It will be understood, of course, that in so doing our statement is not inconsistent with any finding of fact made below.

The importer does not keep a stock of the machines on hand in the United States, but ordinarily contracts with United States customers for their sale and then places an order with the foreign manufacturer. When a machine so ordered arrives, it is invoiced to a purchaser by the importer,

and shipped or delivered to such purchaser from the port of entry.

The importer testified: "A. Well, we make a contract on a certain date and then give shipping orders. Shipment is to be made two, three, or four weeks after. Naturally, we ship the machine from here, and we make the invoice date at the time we ship here."

He testified that from January 1, 1934, to June 1934 he freely offered the machines for sale to all purchasers in the United States at the price of $6,000 per machine, and from June 1, 1934 to September 1934 at the price of $5,500. He produced from his books a list of invoices which were received in evidence, he testifying that they were actual carbon copies of original invoices sent by him to purchasers in the United States during the year 1934. From these invoices both parties in their respective briefs before us present certain tabulated statements. They are not arranged in precisely the same form, but the differences are immaterial so far as the issue before us is concerned. There is no disagreement as to the essential facts which the papers disclose.

The table appearing in the brief on behalf of the Government shows in different columns the dates of contracts made in the United States, dates of the consular invoices (which are taken as the dates of exportation from the foreign country), dates of shipments from the United States ports of entry to the brewery companies, the number of machines in each shipment, the sales prices in the United States, and the purchasers to whom the importer shipped the machines.

It may be said that in five instances the contracts of sale and the exportations from the foreign country were made in the latter part of 1933, but the shipments to the United States purchasers from the entry ports were made in 1934, the last being March 16, 1934. It appears that three of the machines included in the list were damaged machines, sold at the price of $4,500 each. It appears also that four of the transactions took place, respectively, in October, November, and December 1934.

The machine here involved was one sold by the importer to Harry Mitchell Brewing Company. The contract for sale of a machine to it is stated to have been made June 26, 1934. It was exported from Germany, according to the date of the con-

sular invoice, July 11, 1934, and entered at the port of Houston, Texas, August 10, 1934 on which date it was invoiced, and shipped, to the purchaser.

It is the contention of the Government that the five transactions above stated, beginning in the latter part of 1933 and ending March 16, 1934, and the four which took place subsequent to August 10, 1934, may not be considered in connection with the issue before us. We do not understand from the decisions below that they were there considered on the question of value. They were merely referred to in discussing the course of the importer's business. The transactions involving the damaged machines, as of course, are not pertinent and they were not considered below.

We find in the tables printed in the briefs of both parties one transaction in which a machine was shipped from the port of entry to another purchaser (Croft Brewing Company) on the same date— August 10, 1934—as that upon which the involved machine was shipped to Harry Mitchell Brewing Company. The contract for its sale in the United States bears date of July 17, 1934, and the consular invoice indicating the date of its exportation bears date of July 24, 1934. In another instance a contract of sale was made July 13, 1934, the machine being exported from the foreign country July 17, 1934, and shipped to the purchaser (P. Ballantine & Sons) August 6, 1934. In another case a contract of sale bears date of June 26, 1934 (the same date as that of the contract respecting the machine at bar); the export date is given as June 30, 1934, and the date of shipment to the purchaser (Hittleman Goldenrod Brewing Company) from the port of entry as July 18, 1934.

These four transactions are the only ones listed as having taken place during the period from June 1, 1934 to September 1934, the period during which the importer, Baer, testified that he was freely offering the machines for sale at the price of $5,500 each. We regard them as being the only transactions furnishing any substantial evidence in anywise pertinent to the instant controversy. When they are analyzed with reference to the exportation date of the machine here involved—July 11, 1934—it will be observed; (1) that the machine purchased by Croft Brewing Company was entered August 10, 1934, practically one month after July 11, 1934, and immediately

invoiced to the purchaser; (2) that the machine purchased by P. Ballantine & Sons was entered August 6, 1934, more than three weeks after July 11, 1934, and immediately invoiced to the purchaser, and (3) that the machine purchased by Hittleman Goldenrod Brewing Company was entered July 18, 1934, seven days after July 11, 1934, and immediately invoiced to the purchaser.

So, there is no showing of record that at *the time of exportation* of the involved machine, there was any similar imported machine in the United States which was being freely offered for sale.

In the case of United States v. G. W. Sheldon & Co., 23 C.C.P.A., Customs, 245, 249, T.D. 48108, referring to the matter of United States value there involved, we said: "The said value is the price at which such or similar imported merchandise is *freely offered for sale,* packed, in the principal market of the United States, to all purchasers, *at the time of exportation* of the merchandise which is being valued. This could, of course, be established only by such or similar goods which had been previously imported and were being freely offered for sale at the time of export of the goods being valued."

In our decision in the case of The Stern Hat Co. v. United States, 26 C.C.P.A., Customs, 410, C.A.D. 48, the above rule was restated with approval.

■ Upon the basis of those decisions and others, together with the facts as stated, the Government argues before us that there were no prototype machines which had been imported prior to the date of exportation of the involved machine that can be resorted to as a basis for determining United States value.

Specifically, the Government raises this question by Nos. 7 and 8 of its assignment of errors, which read as follows:

"7. In failing to find and hold, as a matter of law, that since no identical or similar *previously imported* machines were being offered or sold in the principal market of the United States on the date of exportation herein, no statutory United States value exists for this importation.

"8. In failing to find and hold, as a matter of law, that since all offers and sales of such or similar machines in the principal market of the United States, during the export period herein were for machines to be imported in the future, no statutory United States value exists for this importation."

As has been indicated, the legal theory presented in the foregoing assignments was never, so far as the record discloses, suggested to the tribunals below. It was not referred to in the Government's motion to dismiss the appeal; the decision of the trial judge gives no indication that it was ever suggested to him; the Government's assignment of errors in connection with its appeal to the appellate division contains no intimation of it, and no petition for a reconsideration by the appellate division of its decision was presented.

It is always a matter of regret to us to be called upon to pass upon questions not presented to the trial court. This is particularly true in reappraisement proceedings, because of the statutory provision which confers upon the single judge and the appellate division of the Customs Court exclusive jurisdiction in finding facts.

Where, however, the questions newly presented to us have been questions of law only, it has been our practice to consider and determine them. United States v. Massce & Co., etc., 21 C.C.P.A., Customs, 54, T.D. 46379; United States v. Briones & Co., Inc., 22 C.C.P.A., Customs, 245, T.D. 47158; United States v. Rodier, Inc., 23 C.C.P.A., Customs, 336, T.D. 48196. For examples of cases in which we have declined to consider certain newly raised questions for reasons stated in the opinions, see United States v. Freedman & Slater, Inc., 25 C.C.P.A., Customs, 112, T.D. 49241; United States v. Fisher Scientific Co., 26 C.C.P.A., Customs, 278, C.A.D. 27.

No one of the above cases was on all fours with the instant case upon the question now under discussion, but they serve as illustrations of our practice.

In connection with this subject matter we deem it not improper to direct attention to the decision of the Supreme Court of the United States in the case of Jay C. Hormel v. Guy T. Helvering, Commissioner of Internal Revenue, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037, rendered March 17, 1941.

In the instant case the newly presented question is, as we view it, solely one of law. The facts relative to the transactions and the course of business appear to have been fully shown. Appellee has made no

point as to its being presented here de novo, but has accepted and argued the issue as presented by the Government, and we deem it proper to consider and decide it.

■ The brief on behalf of the Government states:

"It has been held consistently that the tariff definition of United States value refers to the price in this country of *prototype imported* merchandise on the export date of the merchandise being appraised, and that the deductions allowed by the statute also refer to expenditures, profits, etc., entering into the price at which the prototype imported merchandise was then offered. United States v. Carbic Color & Chemical Co., T.D. 40859, 47 Treas.Dec. 526; United States v. American Aniline Products Inc., 22 C.C.P.A. (Customs) 380, T.D. 47399; United States v. G. W. Sheldon & Co., 23 C.C.P.A. (Customs) 245, T.D. 48108; and The Stern Hat Co. v. United States, 26 C.C.P.A. (Customs) 410, C.A.D. 48.

"In the cases of United States v. G. W. Sheldon, supra, and The Stern Hat Co. v. United States, supra, this court pointed out further that only offers and sales of prototype merchandise which had been imported *previous* to the export date involved can be considered as a basis for arriving at United States value under Section 402 of the tariff acts, but that offers or sales in this country, on or about the export date for *future importation* and delivery, are *not* a proper basis for determining United States value."

Therefore, inasmuch as there was no "such or similar" machine imported into the United States previous to the date of exportation of the involved machine which was being freely offered for sale at such time (all previously imported machines having been already sold) it is argued by Government counsel that under the principle announced in the cited cases, there was no basis upon which United States value could be determined.

It is contended on behalf of appellee, in substance, that continuous bona fide offers to sell and frequent sales in the United States of identical imported merchandise form the basis of United States value, and various authorities are cited and discussed. It is said that the Congress changed the wording of the definition of United States value in framing the Tariff Act of 1922, when the definition embraced in the 1930 act was first stated, to avoid basing such value of merchandise upon its own selling price, as was the previous practice, and it is conceded that United States value may not form a basis for dutiable value of a first importation of a type of merchandise "since there is no prototype imported merchandise in existence," but it is urged that when the course of business is of the kind here involved United States value was created by the procedure which may be taken as the basis of dutiable value.

We are unable to concur in this view. No imported machine was in the United States available to be offered for sale by the importer at $5,500, or at any other price, on July 11, 1934, the date of exportation of the involved machine, nor at any time near that date. The statute defining United States value explicitly states, "The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale * * * in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise * * *," 46 Stat. 709, § 402(e), and it was definitely construed by us in the Sheldon & Co. case, supra, in the manner already stated. Clearly, had the importation here involved been a first importation of the particular type of merchandise at issue no United States value could be determined under the statutory definition which Congress adopted, and there being no prototype machine in the United States at or near the date of exportation of the involved machine available for offer, a fundamental element of United States value, as defined by the statute, was lacking. Upon the facts shown, in our opinion, no legal distinction can be drawn between the importation involved and a case of first importation.

The brief on behalf of appellee suggests that the facts in the Massce & Co. case, supra, were somewhat similar to those in the instant case. A careful study of our decision there discloses that the issue here involved was not present in that case, and we held nothing there which is inconsistent with our holding here. With respect to the pertinent principle involved, this case is not, as we view it, distinguishable from the Sheldon & Co. case, supra, the pertinent rule in which was restated in The Stern Hat Co. case, supra.

■ One other question requires notice. The trial judge specifically held, in effect,

that there was no substantial evidence to support the local appraiser's finding of cost of production, and the appellate division said: "It is noted, also, that the appraiser in the instant case stated that he appraised on the basis of cost of production because he could not satisfactorily determine the existence of a foreign or export value. He did not state that he could not find United States value. The statute, section 402, supra, provides that the cost of production method can be resorted to only when the foreign, export, or United States values cannot be satisfactorily ascertained. There is no proof that the appraiser could not ascertain the United States value, and therefore, upon the record, he was without authority to adopt the cost of production."

It is deemed sufficient to say that the presumption of correctness made applicable by express provision of the statute to the appraiser's finding of dutiable value is applicable here, the importer having failed to establish any other legal basis for determining dutiable value. The case of United States v. V. W. Davis, Sinai Kosher Sausage Factory, 20 C.C.P.A., Customs, 305, T.D. 46087, differed from the instant case in principle and is not here controlling.

In view of the fact that our decision upon the question of law not raised below is decisive of the case, it is unnecessary to discuss other questions suggested.

The judgment of the United States Customs Court is reversed.

Reversed.

LENROOT, J., did not participate in the consideration and decision of this case.