(C.D. 4017)

BORDER BROKERAGE CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 8, 1970)

*Glad & Tuttle* (*George R. Tuttle* and *Hudson F. Edwards* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov* and *Frederick L. Ikenson*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: The problem in this case is to determine the proper tariff rate on wooden cribbage boards that were imported from Canada via Blaine, Washington. The government assessed duty of 20 percent ad valorem, classifying the importations under item 734.15 of the Tariff Schedules of the United States, which item reads in part:

> Chess, checkers, pachisi, backgammon, darts, and other games played on boards of special design, all the foregoing games and parts thereof (including their boards); * * *

Defendant claims alternatively that if item 734.15 is inapplicable, the importations are dutiable at 20 percent under item 735.20 which covers: "Puzzles; game, sport, gymnastic, athletic, or playground equipment; all the foregoing, and parts thereof, not specially provided for."

Plaintiff claims the cribbage boards are properly dutiable at 16⅔ percent ad valorem under item 207.00 as "Articles not specially provided for, of wood."

There is no real dispute as to the facts. Cribbage is a game played by two to four persons with a standard deck of cards. In two-handed cribbage, each player receives six cards, two of which he throws out, face downward, to form the crib, which belongs to the dealer. The cards in counting have a value according to the number of pips or spots on them, the King-Queen-Jack counting as 10 each, all others at their face value. After laying out for the crib, the cards are played from the hand one at a time by each player alternately, each striving to pair or match his adversary's card, or to make the total pip count equal 15 or 31, or to make sequences of not less than three cards. See II *Century Dictionary and Cyclopedia* (1913); Morehead, *The Modern Hoyle* (1944), pp. 97-102. The counting combinations thus made are usually scored by moving pegs on a special scoring device known as a cribbage board. Morehead, id., p. 97; 6 *Encyclopaedia Britannica* (1969), p. 743. This is because scoring in cribbage—in contrast to such card games as bridge, poker and pinochle—is too fast and frequent for convenient recording by other means. However, the record shows that cribbage can be, and is occasionally scored with paper and pencil, or other methods or devices that are capable of keeping a running total.

Scoring is called "pegging" because (as we have seen) it is usually done by moving pegs on the special scoring device—the cribbage board. This consists essentially of a board or device which has a series of holes into which pegs are placed. The standard board has 60 holes for each player, in two rows of 30.[1] "Two pegs are furnished to each player, and each increment to the score is marked by jumping the rearmost peg ahead of the other. Game is either 61 points (once around) or 121 points (twice around); it is a 'lurch,' and counts as two games for the winner, if his opponent has scored fewer than 31 or 61 points, respectively. Scores must be pegged in order, and the final point of a game is marked by pegging into an extra game hole at the head end of the board. By custom the pegs are moved away from the game hole on the outer rows and back on the inner rows." 6 *Encyclopaedia Britannica* (1969), pp. 743-44. See also Morehead, id., p. 98.

---

[1] The imported article is a 120-hole board.

Item 734.15—the assessed provision—is clear in its requirement that the games enumerated and other games must be played on boards of special design. Thus, the provision specifically lists certain games, i.e., chess, checkers, pachisi and darts, all of which utilize a specially designed board in the actual performance of the game. In each such game, the contest is played on the board with the specially designed surface being a necessary element in the play of the game to a competitive conclusion.

Since cribbage is not one of the enumerated games, ejusdem generis is applicable here in interpreting the legislative intent of the words "other games." Applying this principle and consistent with the manifest purpose of the entire provision, we think it clear that the words "other games" include only games which require a specially designed board on which the game is actually played and without which the game could not be played. This is to say that the board must be not merely a scoring device but a requisite of the game to be played.

Against this background, it is apparent that the game of cribbage is essentially a card game that can be played anywhere and on any surface, and in which the strategy of play has no relation to anything except the cards themselves. Thus, the imported board is plainly a scoring device rather than an element of the game. While it may enhance visualization of the game's progress, it contributes nothing to the game itself. In short, we conclude that cribbage is not a game played on a board of special design within the meaning of item 734.15 and that the government's classification of the importation under that item was therefore erroneous.

We come now to the government's alternative claim for classification under item 735.20 which covers: "Puzzles; game, sport, gymnastic, athletic, or playground equipment; all the foregoing, and parts thereof, not specially provided for." It is true that this alternative claim was raised by the government for the first time in its brief. However, the facts in this case—as previously indicated—are not in dispute. Therefore, in the particular circumstances here presented, we believe that justice requires that we consider the alternative claim on the merits. See rule 6(c). For "[r]ules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating * * * practice under which courts * * * would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy." *Hormel* v. *Helvering*, 312 U.S. 552, 557 (1941). See also *United States* v. *Collin & Gissel*, 29 CCPA 96, 101, C.A.D. 176 (1941).

On the merits, we think it obvious that a cribbage board is properly classifiable as game "equipment" under item 735.20. For scoring of cribbage with a cribbage board is an important aspect of the game. Indeed, the fact that scoring is called "pegging" is recognition in and of itself of the importance of the role of the board. Thus, the cribbage board is so inextricably linked with the game of cribbage as to constitute cribbage "equipment" within the meaning of item 735.20.

The protest is overruled, without affirming the classification.