DOUGLAS O. CRADDICK & MAGDALENE V. CRADDICK, Appellants,
v.
TERRITORIAL REGISTRAR OF AMERICAN SAMOA, Appellee.

High Court of American Samoa
Appellate Division

Before MURPHY, Associate Justice, presiding, SCHWARTZ*, Acting Associate Justice, SHRIVER**, Acting Associate Justice, POUTOA, Associate Judge, and ITUMALO, Associate Judge.

SCHWARTZ, Acting Associate Justice.

This case presents the issue of the constitutionality of statutory restrictioins on the alienation of individually owned land to non-Samoans. Appellant Douglas Craddick is a non-Samoan American citizen; his wife and co-appellant, Magdalene Craddick, is a native Samoan. The Territorial Registrar of American Samoa refused to register a warranty deed purporting[1] to convey certain individually owned land to the Craddicks.

On November 16, 1978, appellants petitioned for a Writ of Mandamus to compel the registration of the land, arguing that the Registrar had a clear, present and ministerial duty to register any grant or certificate of title presented to him. The Registrar responded that there was no such duty due to the restrictions on the alienation of land to non-Samoans contained in the American Samoa Code.

Appellants moved for summary judgment. The trial court granted summary judgment to the Territorial Registrar, although he had not moved for judgment. Appellants moved for a rehearing. This motion was denied in a lengthy opinion issued by the trial court. Appellants appeal from the order granting summary judgment to appellee, and from the order denying a rehearing.

Appellants challenge the constitutionality of 27 ASC 204(b), which provides:

> It is prohibited to alienate any lands except
> freehold lands to any person who has less than one
> half native blood, and if a person has any nonnative
> blood whatever, it is prohibited to alienate any
> native lands to such person unless he was born in
> American Samoa, is a descendant of a Samoan, lived
> in American Samoa for more than five years and has

-------------------------

1. American Samoa Code, title 3, section 405 provides:
    The Territorial Registrar may reject any instrument
    appearing to be illegal or not entitled under the
    law to be registered, filed or recorded.

officially declared his intention of making American Samoa his home for life.

Appellants claim this statutory restriction on the alienation of land to non-Samoans violates the guarantees of due process and equal protection contained in the U.S. Constitution and in the Revised American Samoan Constitution. We disagree.

First, we note that the constitutional guarantees of due process and equal protection are fundamental rights which do apply in the Territory of American Samoa. We agree with the lower court that:

> It seems safe to say that the rights guaranteed
> by the Fifth Amendment-- including the broad right
> to due process and the more explicit assurance of
> the equal protection of the laws-- are so basic to
> our system of law that it is inconceivable that the
> Secretary of the Interior would not be bound by these
> provisions in governing the territories, whether
> 'organized,' 'incorporated,' or no. Order Denying
> Motion for New Trial or Rehearing, at 4.

Second, we find that 27 ASC 204(b) does create a classification based on race. As the trial court noted, the statute determines Samoan nationality on the basis of blood, not residence. This is clearly a racial distinction.

It is well established that race is a suspect classification and that statutes discriminating on the basis of race are subject to the strictest judicial scrutiny. Loving v. Virginia, 388 U.S. 1 (1967). A state which adopts a suspect classification "bears a heavy burden of justification" which requires the state to meet certain standards of proof:

> In order to justify the use of a suspect
> classification, a State must show that its
> purpose or interest is both constitutionally
> permissible and substantial, and that its use
> of the classification is 'necessary ...to the
> accomplishment' of its purpose or to the safe-
> guarding of its interest. In Re Griffiths,
> 413 U.S. 717, 721-722 (1973) (cites omitted).

We agree with the trial court's finding that the Territory of American Samoa has demonstrated a compelling state interest in preserving the lands of American Samoa for Samoans and in preserving the Fa'a Samoa, or Samoan culture. We find the prohibition against the alienation of land to non-Samoans to be necessary to the safeguarding of these interests.

It has long been recognized that land holds a central and vital place in Samoan culture. In Haleck v. Lee, 4 ASC 519 (1964), the High Court acknowledged the tremendous importance land has to the Samoan people:

> It is common knowledge in American Samoa, to
> the extent that this Court could properly take

---

2. Appellants also contest the validity of 27 ASC 204(b) pursuant to the policy protective legislation set forth in article 1, section 3 of the Revised Constitution of American Samoa. This issue was not presented to the trial court. The general rule is that issues not raised at the trial level will not be considered for the first time on appeal. Accordingly, we do not rule on the validity of the enactment of section 204(b), but limit our decision to the constitutionality of that provision.

> judicial notice, that the most valuable tangible
> thing that the Samoan people possess is the land,
> and the average Samoan needs statutory protection
> regarding alienation of land if he is not to lose
> it forever.

_Id_. at 550. The critical need to protect this land and to preserve it for the Samoan people is codified in the Samoan Constitution itself. Article I, section 3 of the Revised Constitution of American Samoa is entitled "Policy Protective Legislation" and provides:

> It shall be the policy of the Government of American
> American Samoa to protect persons of their lands and
> the destruction of the Samoan way of life and language,
> contrary to their best interests. Such legislation
> as may be necessary may be enacted to protect the lands,
> customs, culture, and traditional Samoan family organi-
> zation of persons of Samoan ancestry, and to encourage
> business enterprises by such persons.

27 ASC 204(b) was enacted to further the protective policy enunciated in Article I, section 3. The protection of Samoan lands is a permissible state objective "independent of the racial discrimination which it was the object of the Fourteenth Amendment to eliminate." _Loving v. Virginia_, _supra_, at 11.

As has previously been noted:

> It is an indisputable fact that since the raising
> of the American flag in April 17, 1900, to the
> present, it has been the uninterrupted policy of
> the Government of American Samoa to protect Samoan
> communal lands for the benefit of Samoans. _Haleck_,
> _supra_, at 544-545.

The trial court has reviewed in detail the "90-year history of concern that native lands in Samoa not be alienated to non-Samoans," and we will not re-travel this well worn road. We merely point to the history of treaties and laws as evidencing recognition on the prat of the United States Government from the very beginning of the compelling nature of the governmental interest in restricting alienation.[3]

The urgent need to prevent the alienation of Samoan lands from the Samoan people is vividly expressed in _Haleck v. Lee_, _supra_:

> Land to the American Samoan is life itself. He
> cherishes the land where his ancestors came hundreds

---

3. The Treaty of Berlin, which was ratified by the United States Senate on February 4, 1890, provides that:

> In order that the native Samoans may keep their lands
> for cultivation by themselves and by their children
> after them, it is declared that all future alienation
> of lands in the Islands of Samoa to the citizens or
> subjects of any foreign country, whether by sale,
> mortage or otherwise shall be prohibited.

The later treaties ceding Eastern Samoa to the United States carried forward the spirit of the Treaty of Berlin. These treaties were the fountainhead for future legislation by the Fono, including 27 ASC 204(b). Also, see the earlier and more stringent alienation prohibition in Section 1282, Chapter 31 of the 1949 edition of the Code of American Samoa.

of years ago, and where he and his children were
born. Land is the only thing he values above any-
thing else because it belongs to him and will belong
to his children, just as it belonged to his predeces-
sors for centuries past. Land is what he lives from,
for it is only on the land that he can plant, nurse,
and grow his plantations of coconuts, papayas, taro...
and other food. Land is where he cooks his food.
Land is where the bones of his beloved ancestors are
buried. Land is where he builds his fale, large or
small. Land is the material thing he loves most,
after his children. Land is the most valueable in-
heritance he can leave his children when he dies.
Land is his greatest horizon between the sea and the
sky. Land is the greatest gift from God to him on
this earth, after life itself.

The whole fiber of the social, economic, traditional,
and political pattern in American Samoa is woven fully
by the strong thread which American Samoans place in
the ownership of land. Once this protection for the
benefit of American Samoa is broken, once this thread
signifying the ownership of land is pulled, the whole
fiber, the whole pattern of the Samoan way
of life will be forever destroyed. Id. at 551.

It is this compelling state need to preserve an entire culture and way of life that permits the government of American Samoa to utilize a racial classification and still withstand the rigorous scrutiny of a watchful court.

Finally, we note that the total land area of American Samoa is only 76.2 square miles. It is clear that, with so little land available, each acre is precious, and the government of American Samoa has a vital interest in protecting the Samoan people from improvident deprivation of their land. In light of this paramount need, we find that restrictions on the alienation of all lands, except freehold lands, are necessary to the accomplishments of the desired ends of preserving Samoan lands and culture for Samoans.

We have determined that 27 ASC pursues a proper purpose rather than a discriminatory one, and that the government of American Samoa has demonstrated a compelling historical and continuing interest in preserving the land and culture of the Samoan people. Because of the foregoing concerns, we hold the use of racial classification to be necessary to the safeguarding of these interests.

Accordingly, the judgment of the trial court is affirmed.

MURPHY, Associate Justice, dissenting.

This matter reached the appellate division of this Court pursuant to an order for summary judgment granted sua sponte prior to trial. On appeal, Appellants raised for the first time the issue of the policy announced in Section 3, Article I of the Revised Constitution of American Samoa, which in its entirety reads:

"Section 3. POLICY PROTECTIVE LEGISLATION:
It shall be the policy of the Government of American Samoa
to protect persons of Samoan ancestry against alienation
of their lands and the destruction of the Samoan way of
life and language, contrary to their best interests. Such

legislation as may be necessary may be enacted to protect lands, customs, culture, and traditional Samoan family organization of persons of Samoan ancestry, and to encourage business enterprises by such persons. No change in the law respecting the alienation or transfer of land or any interest therein, shall be effective unless the same be approved by two-thirds vote of the entire membership of each house and by the Governor."

Although not cited by Appellants in their brief, Article II, Section 9 of the Revised Constitution of American Samoa[1] further supports their contention.

Appellants contend that 27 ASC 204, one of the statutes on which Appellee relies in refusing to register Appellants' warranty deed, was approved by only one legislature, and is, therefore, not effective. Because this matter is raised now for the first time, the trial court was never given an opportunity to consider this argument.

Ordinarily, appeals courts do not consider issues raised for the first time on appeal, but Appellee concedes this is discretionary with the appellate division. Hormel v. Helvering, 312 U.S. 552 (1941); Singleton v. Wulff, 428 U.S. 106 (1976). However, appellate courts can and will consider issues initially raised on appeal if not to do so would be violative of fundamental justice. Hormel, supra.

If 27 ASC 204 is an important statute, and both parties strongly urge it is, the question of its validity or effectiveness should not be sidestepped by the High Court. If, as Appellants contend, every Fono since 1961 has failed to ratify the statute it may be that this issue requires more than the casual footnote given it by the majority.

The validity of 27 ASC 204 was recently addressed by the trial division of this Court in Atufili v. Burns Philp, LT 014-79 (February 29, 1980). The Chief Justice speaking for the Court, traced the history of and the policy behind the statute and concluded because 27 ASC 204 was not passed by two successive legislatures, the statue was an invalid enactment. The Court then applied 27 ASC 204's predecessor sections from the Code of American Samoa (1949) and any valid enactments extant at the time of the alleged violation. The law articulated by the trial division of this court to be in effect is the applicable provisions of the 1949 and 1961 Codes, namely section 9.0102 of the 1961 Code and sections 1280, 1282, and 1290 of the 1949 Code. Today's action avoids this issue leaving all potential litigants and the Territorial Registrar in quandry as to what is now the law.

Should the case have been remanded, I would also have directed the trial court to make findings of fact and conclusions of law as they may pertain to the constitutional questions of due process and equal protection that are raised.

Appellee claims the issue of the constitutionality of this statute has already been tried and upheld in Haleck v. Lee, 4 ASR 519 (1964), however, that case only reached the validity of the 1949 statute[2] as it was applied

---

1. " ...Furthermore, nothing in this section shall be deemed to permit any change in the law respecting the alienation or transfer of land or any interest therein to be effective unless such change shall have been approved by two successive Legislatures by a two-thirds vote of the entire membership of each House and by the Governor as provided in Section 3 of Article 1."

2. Haleck v. lee, 4 ASR 519 (1964) upheld the constitutionality of section 1281 and section 1283 of the 1949 code. Section 1281 created a land

to _communal_ land.   Although not mentioned by the majority, this case involves _individualilly_ owned land.

Both parties, the justices in the majority in this case, and myself agree that 27 ASC 204 creates a classification based on race.   Race is a suspect classification (_Bolling v. Sharpe_, 347 U.S. 497 (1954)) and subject to strict judicial scrutiny (_Korematsu v. United States_, 323 U.S. 214 (1944); _McLaughlin v. Florida_, 379 U.S. 184 (1964)).   To withstand this higher level of scrutiny, the Government must present a compelling state interest, and the majority of this Court finds that the Government has such an interest.   While I do not necessarily disagree with the conclusion, I do disagree with the requirements necessary to reach that conclusion.

The majority relies heavily on _Haleck_, _supra_, wherein Justice Roelstated his beliefs as to what was Samoan custom.   It appears from the opinion that Justice Roel did not feel it necessary to hear evidence regarding the Samoan custom or the Government's compelling interest. Justice Roel's approach to the issue is summarized in one paragraph of his opinion.

> It is common knowledge in American Samoa, to the extent that this Court could properly take judicial notice, that the most valuable tangible thing that the Samoan people possess is the land, and that the average Samoan needs statutory protection regarding alienation of land if he is not to lose it forever. Were it not for the statutory protection, it is not an exaggeration to say that a great deal of the communal land would have been lost to the Samoans by this time, either through the generousity, ignorance or incompetence of the Matai or by the irresistible monetary temptation offered either by Samoans with financial means or by Americans and other tourists to this island who would certainly like to acquire real property in this beautiful area.   Even with the statutory restrictions there have been occassions when merchants have brought actions in court seeking to foreclose a mortage on communal land, the consideration for said mortgage having been two or three kegs of beef for a funeral.   This only goes to show that the average Samoan is not quite ready to deal on an equal basis when it comes to business transactions with a more sophisticated, business-trained or perhaps unscrupulous individual.
> _Haleck_, _supra_, at 550-551.

In 1964 Justice Roel took judicial notice of the value of land to the Samoans; today the majority overlooks a controlling constitutional provision and holds that the Territory of American Samoa has demonstrated a compelling state interest in preserving the lands of American Samoa for Samoans.   But how did the Government present this compelling interest?   There has yet to be one iota of evidence presented to the Court.   To issue decisions such as in this case and in _Haleck_ seems the ultimate of paternalism.   In _King v. Andrus_, 452 F.Supp. 11 (D. DC 1977), the Court heard testimony and evidence

---

commission which made recommendations to the governor "respecting the approval or disapproval of instruments affecting title, ownership, or posession of land."

presented by a cross-section of Samoan leadership and qualified experts before determining if the Government had an interest sufficiently compelling to prohibit trial by jury of American citizens residing in American Samoa. I believe the same approach should be used in this case.

Much time has been devoted to the proposition that the Samoan way of life will soon come to an end if 27 ASC 204 is held invalid. This is a question of fact which in my mind has yet to be answered. The proposition may well be true, and if it is I would be loathe to change by judicial fiat a culture founded on its communal land system. 27 ASC 204 may be a good and necessary statute, but why rush to that judgment? If it is good law it will only gain respect by undergoing the careful analysis this Court is capable of giving it.

The manner in which this issue has been treated by this Court continues to bother me. This is an important issue and Appellants have raised serious constitutional questions. It seems to me Appellants deserve their day in Court.

---

\*Honorable Edward J. Schwartz, Chief United States District Court Judge, Southern District of California, sitting by designation of the Secretary of the Department of the Interior.

\*\*Honorable Paul D. Shriver, United States District Court Judge, Retired, Territory of Guam, sitting by designation of the Secretary of the Department of the Interior.