HALL, Senior Circuit Judge,
dissenting:
I respectfully dissent.
Agatha Sokoloski had the bad fortune of requiring total knee replacement that resolved one problem but created another. In addition to bad knees, Sokoloski had a preexisting back condition which had required surgery in 1982. Sokoloski’s back condition was sufficiently serious to require a pre-surgery evaluation from her orthopaedic surgeon before she was cleared for her knee operation. While the knee surgery was a success, the difficulties that Sokoloski had with her knees and her use of crutches and a cane to help her walk exacerbated her back condition to the extent that it became a separate source of long term disability.
*212 In addition, Sokoloski also had bad timing. Beginning on August 26, 1997 she took sick leave from BG & E on doctor’s advice in order rest and stay off her legs in preparation for her operation. Due to her multiple disabilities, she did not return and was routinely terminated after six months once her sick leave had run out. But for the fact that the events that left Sokoloski disabled happened to coincide with a decision of her employer to switch insurance carriers, there is little question that she would have been eligible for long term insurance benefits with CIGNA and would probably not be before this Court.[1]
Finally, Sokoloski has also now gotten a bad result from the legal system. Like the majority, I agree with the District Court’s holding that Sokoloski was not “Actively at Work” at any point on or after September 1, 1997 and was not covered on that basis. However, that should not end the matter. The Fourth Circuit has established that issues raised for the first time on appeal may be considered in “exceptional circumstances.” United States v. One 1971 Mercedes Benz 2-Door Coupe, 542 F.2d 912, 915 (4th Cir.1976). As Sokoloski has argued for the first time before this panel, and as the MetLife policy documents make clear, she has a second basis for claiming benefits under the MetLife plan: namely its “Continuity of Coverage” provision. With respect to the majority, I submit that we are presented with exceptional circumstances and would remand for the simple factual determination necessary to resolve Sokoloski’s alternate claim.
As noted in the last footnote of the majority’s opinion, the MetLife plan includes a “Continuity of Coverage” provision, which states:
In order to prevent loss of your coverage because of a transfer of insurance carriers, This Plan will provide coverage for you as follows:
1. Failure to Be Actively at Work Due to Injury or Sickness This Plan will cover you, if you:
a. were covered under the prior carrier’s plan at the time of transfer, and
b. are not Actively at Work due to Injury or Sickness;
provided the required payment toward the cost of Long Term Disability Benefits is made to us for you.
The benefit payable will be that which would have been paid by the prior carrier had coverage remained in force, less any benefit for which the prior carrier is liable.
The plain purpose of this provision is to provide coverage to persons like Sokoloski. The “Continuity of Coverage” clause anticipates that people in her position may not be able to qualify for long term benefits under the “Effective Dates” provision because they happen to have become unable to work during a period when coverage is being transferred.
For the most part, it is also plain that Sokoloski qualifies for coverage under the specific terms of the provision. It is not disputed that she was “covered” under the *213 prior policy at the time of transfer as required by part “a” of the “Continuity of Coverage” provision. Indeed, as a former employee with more than 20 years’ service to her company, it should be evident that she had both earned and paid for her coverage. There is also no dispute that Sokoloski was not “Actively at Work” due to injury on or after September 1, 1997, the date the record indicates the policies transferred.[2] MetLife itself vigorously argues this very point. The only open issue in determining whether Sokoloski should be covered is therefore whether, as seems likely, BG & E paid premiums on behalf of Sokoloski to MetLife.
Especially in light of the obviousness of this claim, I believe it is wrong to deny Sokoloski benefits to which she is probably rightfully entitled on procedural grounds. Ordinarily, of course, this Court does not consider issues not previously raised. Id. In addition to considerations of judicial economy, this rule is rooted in the recognition that it is essential for fair process that each side have the opportunity to fully argue the merits and introduce relevant evidence. See Hormel v. Helvering 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941). However, the matter of what questions may be taken up for the first time on appeal is one left to our discretion. Singleton v. Wulff 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Consistent with that discretion, when an error is “plain” and a refusal to address it would result in a denial of fundamental justice, it should be corrected. United States v. Barge Shamrock, 635 F.2d 1108, 1111 (4th Cir.1980). This court has held:
Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice.
Washington Gas Light v. Virginia Electric & Power Co. 438 F.2d 248, 250 (4th Cir.1971) (quoting Hormel, 312 U.S. at 557, 61 S.Ct. 719); see also Barge Shamrock, 635 F.2d at 1111; Furka v. Great Lakes Dredge & Dock Co. 755 F.2d 1085, 1089 (4th Cir.1985). This is precisely what is at issue here.
The system has failed Agatha Sokoloski. The “Continuity of Coverage” provision is documented in the record. The issue of whether it provided coverage to Sokoloski should have been obvious to the parties. In the first instance, of course, the error must be attributed to Sokoloski’s counsel who was certainly remiss not to raise the issue below. At the same time, however, this is not a case where an unsuspecting defendant is surprised by a last minute claim. It is simply not plausible that Met-Life was unaware of Sokoloski’s probable rights under the “Continuity of Coverage” provision. It was the party most familiar with its own policy, it had been given notice of a claim arising at the time of transfer from another insurance carrier, and it was certainly in a good position to determine whether premiums had been paid to it on Sokoloski’s behalf. Moreover, in both its correspondences with Sokoloski denying benefits and its subsequent position during litigation, MetLife argued the very set of conditions that should have suggested Sokoloski was likely covered un *214 der the “Continuity of Coverage” clause. Yet, at no time did MetLife notify Sokoloski of this fact. This smacks of bad faith, and the fact that the issue was consequently not addressed by the District Court should not inhibit us from considering it.
Justice requires us to recognize Sokoloski’s obvious claim and remand to the District Court to resolve the limited factual issues remaining to determine Sokoloski’s right to benefits under it. Sokoloski has put evidence in the record showing that her pay was being deducted for “flexible benefits” such as MetLife coverage. Met-Life argues that it does not conclusively show that the deductions were to pay for MetLife premiums. It should be a relatively straight-forward evidentiary exercise to determine whether this was in fact the case. In the case that it is, the District Court should grant Sokoloski’s claim for coverage and determine the amount and timing of benefits payable consistent with the other terms of the MetLife policy and the date of transfer.

. It’s true, as noted by the majority, that CIG-NA denied Sokoloski coverage because it claimed she was not disabled between late October 1997 and January 14, 1998. However, even assuming this is true, it would not ultimately have denied her long-term benefits absent the change from CIGNA to MetLife. It would merely have changed her start date. CIGNA denied Sokoloski benefits because it claimed she was not continuously disabled for 180 days as calculated from August 25, 1997. For this reason she did not satisfy its benefits waiting period for a disability beginning on that date. At the same time, CIGNA did not dispute that she had a disability beginning in January 1998. Had she still been covered by the CIGNA policy at that time, (which she almost certainly was not), she would have been eligible for benefits for a disability beginning on that date.

. While there is no direct evidence from CIG-NA or BG & E in the record conclusively demonstrating that September 1, 1997 was the date that CIGNA ceased insuring employees of BG & E, the fact that the MetLife policy was purchased to begin on that day is strong indirect evidence to that effect.