Samuel E. **NESMITH**, Plaintiff,

v.

**YOUNG MEN'S CHRISTIAN ASSOCIA-TION OF RALEIGH, NORTH CARO-LINA, INC.,** and **C. Lynn Brown**, President of the Executive Committee of the Young Men's Christian Association of Raleigh, Inc., Defendants.

Civ. A. No. 1768.

United States District Court
E. D. North Carolina,
Raleigh Division.

Oct. 3, 1967.

Conrad O. Pearson, Durham, N. C., Samuel Mitchell, Raleigh, N. C., J. LeVonne Chambers, Charlotte, N. C., and Jack Greenberg, New York City, for plaintiff.

James K. Dorsett and Henry A. Mitchell, Jr., of Smith, Leach, Anderson & Dorsett, Raleigh, N. C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWIN M. STANLEY, Chief Judge.[*]

Plaintiff, Samuel E. Nesmith, a Negro, on behalf of himself and others similarly situated, seeks injunctive relief against alleged racially discriminatory practices by the defendants in the operation of the Young Men's Christian Association of Raleigh, North Carolina, Inc. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343, and the action is instituted pursuant to Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq. Defendants deny that its athletic and health club facilities are covered by the Civil Rights Act of 1964.

The case was tried by the Court without a jury. After considering the evidence (which consists of stipulations, depositions, answers to interrogatories, and exhibits), and the briefs and arguments of counsel, the Court now makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

### FINDINGS OF FACT

1. This action was instituted on October 7, 1965, by the plaintiff, a Negro, on behalf of himself and others similarly situated, who at that time was a citizen and resident of the City of Raleigh, North Carolina.

2. The defendant, Young Men's Christian Association of Raleigh, North Carolina, Inc. (hereinafter referred to as defendant association), is a non-profit corporation, incorporated under the laws of the State of North Carolina. The defendant, C. Lynn Brown, is President of the Executive Committee of the defendant association.

3. The defendant association pays certain funds or contributions to the National Council of Young Men's Christian Associations of the United States, and exchanges reports and other communications with said Council.

4. The stated objective of the defendant association is to develop the Christian character and usefulness of its members through a vigorous program of religious, physical, mental and social activities.

5. To carry out its stated purposes and objectives, defendant association has, with the aid of private contributions, memberships, and the operation of its various facilities, constructed two buildings at 601 Hillsboro Street, in the City

[*] Chief Judge, United States District Court, for the Middle District of North Carolina, sitting by designation.

of Raleigh, North Carolina, viz: a Community Building and an Athletic Club Building.

6. The facilities of the Community Building include rooms for community and civic meetings, rooms for classes and discussion clubs, a chapel, rooms for rental to permanent and transient guests, a coffee shop, public lounges, and a television viewing area. These facilities are open for the use and benefit of the general public. There is no membership requirement for use of any of the facilities of the Community Building. However, a charge is made for guest rooms, food services, the use of certain meeting rooms, and for special class instruction.

7. The facilities of the Athletic Club Building include showers, steam rooms, exercise devices, basketball courts and a swimming pool. Admission to the Athletic Club Building is by membership card only, and in order to be admitted to or use the facility it is necessary for a person to be a member of one of the defendant association's health clubs, viz: the Men's Athletic Club, Women's Athletic Club, Men's Health Club, or Youth's Athletic Club. A membership control office is charged with the responsibility of checking the admittance of club members to the Athletic Club Building.

8. The Athletic Club Building is from twenty-five to fifty feet from the Community Building, but the two buildings are connected by an overhead covered walkway. The two buildings are also physically connected with a single heating unit, single utilities, and single telephone connections. Although the general administrative and financial operations of the defendant association are conducted as one unified operation, the facilities of the Community Building and the Athletic Club Building are regarded as separate and distinct operations.

9. In order to become a member of a particular health or athletic club, an individual must submit a written application upon a form supplied by the defendant association, accompanied by the recommendation of an active member and the requisite membership fee. The application is then forwarded to the membership committee for consideration. Thereafter, the applicant is notified as to action taken on the application. Membership in a particular health club has for many years required the payment of an annual membership fee, ranging at present from $30.00 for the Youth Athletic Club to $100.00 for the Men's Health Club. The membership requirements for use of the facilities of the Athletic Club Building have been in existence for more than twenty-nine years.

10. The constitution of the defendant association provides that any applicant for membership in the association must obtain the recommendation of an active member, and that any applicant may be rejected by the membership committee in its discretion. There are no written rules to guide the membership committee in exercising its discretion in the consideration of applications.

11. To secure and maintain members, the defendant association, each November, conducts a membership drive to renew the memberships of its old members and to recruit new members. As of December 31, 1965, there were 1,028 members in the Men's Health Club, 466 members in the Men's Athletic Club, 95 members in the Women's Athletic Club, and 1,107 youth members. From August 1, 1965, to September 8, 1966, 1,295 new members were acquired by the defendant association. In considering the applications for these new members, five applications were rejected. One of those rejected was the plaintiff herein, and the other four were white applicants.

12. Privileges granted to persons to use the facilities of the Community Building do not enable such persons to use the facilities in the Athletic Club Building. Consequently, the fact that a person uses the food facilities or occupies a guest bedroom in the Community Building does not entitle such person to use the facilities of the Athletic Club Building. If a fee is required by a member of the general public to use a facility of the Community Building, the same fee would be required of a member of one of

the health clubs of the defendant association to use such facilities. In other words, a person having the right to use any or all of the facilities of the Community Building does not, by virtue of that right, acquire any right to use any of the facilities of the Athletic Club Building. Conversely, a member of one of the health clubs acquires no greater right to use the facilities of the Community Building than a nonmember of one of the health clubs.

13. All services and accommodations, including eating and rooming facilities, in the Community Building, are equally available to the public generally, including Negroes, and the only issue here involved is whether the plaintiff and others similarly situated are entitled to membership in the health and athletic clubs of the defendant association without discrimination on the basis of race or color.

14. In August of 1965, plaintiff made application for membership in the Men's Athletic Club and tendered the requisite fee therefor. By letter dated September 9, 1965, he was notified that his application was not approved by the membership committee. Prior thereto, one Wilbert V. Johnson, also a Negro, made application for membership in the Youth Athletic Club on behalf of his son. By letter dated June 30, 1965, Mr. Johnson was notified that his application had not been approved by the membership committee.

## DISCUSSION

This appears to be a case of first impression. No case has been cited or found which deals with the precise issue here presented, and it is conceded that whatever rights the plaintiff has must be found in the provisions of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq.

To the extent pertinent, 42 U.S.C. § 2000a provides:

"(a) All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

(b) Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action:

(1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;

(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

(4) any establishment (A) (i) which is physically located within the premises of any establishment otherwise covered by this subsection or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

\* \* \* \* \* \*

(e) The provisions of this subchapter shall not apply to a private club or other establishment not in fact open to the public, except to the extent that the facilities of such establishment are made available to the customers or patrons of an establishment within the scope of subsection (b) of this section."

There is clearly no basis for a finding that the operation of the health and athletic club facilities of the defendant association constitutes a place of "public accommodation," as defined by § 2000a (b) of the Act.

The Athletic Club Building does not provide lodging to transient guests, does not engage in selling food for consumption on the premises, and is not a place of exhibition or entertainment. Additionally, there is no evidence to support a finding that any of the activities carried on in the Athletic Club Building affect commerce, or are supported by State action. Viewing the record as a whole, the conclusion is inescapable that the health and athletic club facilities are nothing more than a local club supported by private contributions and membership fees.

The thrust of plaintiff's argument is that since the defendant association provides lodging to transient guests and sells food for consumption on the premises in its Community Building, which constitutes a place of public accommodation as defined by 42 U.S.C. § 2000a(b) (1) and (b) (2), and since 42 U.S.C. § 2000a (e) is inapplicable, its total facilities and operations are covered by the Act. This argument is based on the contention that the athletic and health club facilities are physically located within the premises of the Community Club Building, a covered facility, and thus comes within the provision of 42 U.S.C. § 2000a(b) (4). Plaintiff's argument is faulty in several respects. In the first place, it cannot be said that the health and athletic club facilities are physically located within the premises of the Community Building, the covered establishment. The facilities are located in separate buildings and constitute separate and distinct operations. The facts that the two structures are physically connected by a covered walkway, some of the operations of the two facilities are carried on by the same person, and both buildings are served by the same heating unit and other utilities, are of little consequence. But even conceding that the two facilities are phys-

ically located within the same premises, plaintiff has another hurdle which he cannot possibly overcome. A further requirement of 42 U.S.C. § 2000a(b) (4) is that the establishment which is not otherwise covered must hold "itself out as serving patrons of such covered establishment." All the evidence is to the effect that the use of one facility does not give the individual the right to use the other facility. The right of the public to use all the services of the Community Building confers no right whatever to either enter or use any of the facilities of the Athletic Club Building. Members of one of the athletic or health clubs have no right superior to the right of any other person to use the facilities of the Community Building. There is not a scintilla of evidence that the defendant association has ever represented, either directly or indirectly, that its health and athletic club facilities were available to patrons of the Community Club Building. The opposite is true. In order for a person to be entitled to the use and benefit of the services offered in the Athletic Club Building, he must be admitted into membership in one of the athletic or health clubs, and pay the required membership fee. Admission to membership is within the sole discretion of the membership committee. This is not a policy or procedure designed as a scheme or subterfuge to evade the provisions of Title II of the Civil Rights Act of 1964. It has been an established practice of the defendant association for at least twenty-nine years.

And finally, 42 U.S.C. § 2000a(e) contains a clear declaration of legislative policy to exempt from the provisions of the Act operations such as those conducted by the defendant association in its Athletic Club Building. The health and athletic club facilities, to repeat, constitute nothing more than "a private club or other establishment not in fact open to the public * * *." There is nothing in the record to support a finding that such facilities are made available to the public generally or to the patrons of the Community Building.

The argument of the plaintiff that the constitution of the defendant association requires all its facilities and services to be made available to any person of good moral character who subscribes to the association's purposes and pays the annual membership fee, finds no support in the record. Article II, § 1 of the Constitution, the provisions to which the plaintiff makes reference, makes provisions for persons of good moral character who subscribe to the association's purposes to "apply for *membership* in the association." There is a substantial difference in making the facilities *available* to persons of good moral character and making such persons *eligible to apply for membership*. It would be a distortion of the truth to say that any person has ever been entitled to use the health and athletic facilities without having first been admitted to membership in one of the health clubs by the discretionary action of the membership committee. While admittedly the number of rejections have been small, the membership committee has nevertheless rejected white applicants as well as the application of the plaintiff.

It is concluded that the defendant association, a local, non-profit corporation supported by private donations, has the right to limit the use of its health club facilities to members of its health and athletic clubs, and that its membership committee has the discretionary power and authority to either accept or reject all applications submitted to it for consideration.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter.

2. This is a proper class action within the meaning of Rule 23(a), (b)(2) of Federal Rules of Civil Procedure.

3. The health and athletic club facilities operated by the defendant association in its Athletic Club Building do not constitute a covered establishment within the meaning of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq.

4. The services and facilities offered by the defendant association in its Athletic Club Building are only available to members approved by its membership committee, and are not open to the public. Such services and facilities are thus exempt from the requirements of the Act under 42 U.S.C. § 2000a(e).

5. The plaintiff is not entitled to the injunctive relief sought.

6. The defendants are entitled to a judgment dismissing the action with prejudice.

A judgment will be entered accordingly.