Blevin STOUT and Sammie Bibb, Jr., Individually, and on behalf of others similarly situated, Appellants,

v.

YOUNG MEN'S CHRISTIAN ASSOCIATION OF BESSEMER, ALABAMA, Appellee.

No. 25894.

United States Court of Appeals Fifth Circuit.

Dec. 6, 1968.

Norman C. Amaker, New York City, Oscar W. Adams, Jr., Birmingham, Ala., Conrad K. Harper, Jack Greenberg, New York City, Harvey M. Burg, Birmingham, Ala., for appellants.

J. W. Patton, Jr., J. Howard McEniry, Jr., Bessemer, Ala., for appellee.

Before JOHN R. BROWN, Chief Judge, and RIVES and McENTEE*, Circuit Judges.

RIVES, Circuit Judge:

Stout and Bibb, individually and on behalf of others similarly situated, seek relief against the Young Men's Christian

---

* Of the First Circuit, sitting by designation.

Association of Bessemer, Alabama (hereinafter referred to as Y.M.C.A.), pursuant to Title II of the Civil Rights Act of 1964, 78 Stat. 243, 42 U.S.C. § 2000a to 2000a–6 (hereinafter referred to as the Act).[1]

■ The district court denied relief in reliance on Nesmith v. Y.M.C.A. of Raleigh, N.C., E.D.N.C.1967, 273 F.Supp. 502, which was thereafter reversed with directions by the Fourth Circuit, 397 F.2d 96. Factually, the district court found, *inter alia*, that the Y.M.C.A. at Bessemer is a private club whose facilities are not open to the public. On a careful consideration of the evidence, we hold that finding clearly erroneous and reverse.

### I.

The Bessemer Y.M.C.A. is a tax-exempt,[2] nonprofit, Alabama corporation governed by a 24-member Board of Directors and autonomous in its operation, though a member of the National Council of Y.M.C.A. and the Southern Area Council of Y.M.C.A. About 53 or 54% of its income is derived from the United Appeal or Community Chest by county-wide solicitation of the general public. Of 3070 different membership applications in 1966, all were accepted except four dormitory applications which were rejected. The district court found that the two named Negro plaintiffs who filed the present class action were denied membership and the use of a room solely because they were Negroes. Three weeks later a white person applied for and was rented a room for the night for $1.50, of which 50 cents was described on his receipt as a "Membership Fee." Actually, he was not questioned nor required to submit a formal membership application. Mr. Hurst, the General Sec-

retary of the Bessemer Y.M.C.A., testified flatly "that membership is open to the general public." "A private club or other establishment not in fact open to the public" is exempted from the provisions of the Act.[3] Clearly, the Bessemer Y.M.C.A. is not such a private club.

### II.

The Y.M.C.A. building contains 46 bedrooms, 12 doubles and 34 singles, or a total of 58 beds for rent. Most of the dormitory rooms are rented to persons who work in plants in Bessemer and go to their homes in other parts of Alabama on the weekend. In 1965 six persons rented a room for less than a week, and in 1966 there were five. The Secretary testified:

"Q. But, as a matter of fact, you do serve itinerants, is that right? A. Well, we do occasionally, but we don't have many rooms, and the rooms we have are usually full, and it is occasionally that we do have a room we rent. We do not keep rooms for itinerants. We tell them to go to Birmingham for usually our rooms are full.

\* \* \* \* \* \*

"Q. But you say you do not ask them whether or not they are members of the Y or a Y? A. No.

\* \* \* \* \* \*

"Q. You don't require transient people to go through the board of directors before they could get a room there? A. No. They are supposed to fill out the application, and if there is any question about it—

"Q. But if nothing unusual, you rent the room? A. That's right, if it is available.

"Q. And you don't inquire as to whether or not they live in the State

1. By supplemental brief in this Court, the appellants for the first time raise the applicability of 42 U.S.C. § 1981, arguing by analogy to the holding with reference to § 1982 in Jones v. Alfred H. Mayer Co., 1968, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189. Since no injustice will result in this case, we refuse to give consideration to such an issue not raised

in the district court. Hormel v. Helvering, 1941, 312 U.S. 552, 556, 557, 61 S. Ct. 719, 85 L.Ed. 1037; 3A Barron & Holtzoff, Federal Practice & Procedure (Wright ed.) § 1590.

2. Tit. 51, Code of Ala. (recomp. 1958) § 12.

3. 42 U.S.C. § 2000a(e).

of Alabama or out of the state, do you? A. No, sir; we do not."

Most significantly the district court found that the two named Negro plaintiffs were denied the opportunity to rent rooms not on the ground of no vacancy but because they were Negroes.

■ The Act includes as a "place of public accommodation" an "establishment which provides lodging to transient guests." [4] Whatever may be the exact meaning of "transient guests," it is clear that mere itinerants or overnight guests come within that classification, and further that such guests are provided lodging at the Bessemer Y.M.C.A. when rooms are available. The Bessemer Y.M.C.A. violated the Act when it denied rooms to the two named Negro plaintiffs solely because they were Negroes.

Upon oral argument, appellee's counsel candidly admitted that since room rental carries with it "membership" for the time being, those renting rooms are entitled to use the facilities such as the swimming pool which are available to other "members" of the Y.M.C.A. See 42 U.S.C.A. § 2000a(b) (4). The Bessemer Y.M.C.A. violated the Act when it denied membership to the named plaintiffs because they were Negroes.

### III.

"Membership," however, has no relation to service of food under the peculiar arrangements at the Bessemer Y.M.C.A. On that subject the district court found:

"The YMCA as such buys no food, nor does it serve any food on the premises. It has one candy and coke machine. Except for certain civic clubs which have a standing approval the caterer is required to secure approval before entertaining any club. No food is served to individuals at any time. For a while the Lions Club had a practice of having an oyster supper once a year to which the public was invited, but this has been discontinued." [5]

The Secretary testified:

"Q. Can the dormitory residents eat in the Y.M.C.A.?

"A. No, I don't even eat there.

"Q. These residents at no time are accommodated even with coffee or tea?

"A. No. In other words, I don't even eat there. All those that eat there are groups that are served."

Thus any right to relief as to the selling of food on the premises must rest not on the right to rent a bedroom, nor on individual "membership," but on the claimed refusal of requests of the named plaintiffs for dining facilities for Negro organizations. The district court made no finding as to any such request. The Secretary denied that any such request was made:

"Q. Now, you have heard the testimony? Did they ask anything about organizations? A. They did not.

"Q. Did they ask anything about food? A. They asked to be served. I was down at the Kiwanis Club, and I was down eating, and it was between 12:30 and 1 o'clock, and they came and called me. I came upstairs, and the first thing they asked was to be served to eat. I told them we did not serve the general public, and they asked about the dormitory rooms.

"Q. They did not say anything about any organization? A. They did not even mention the organization."

He further testified that " * * * we don't serve other than church groups and the civic groups. That's all we serve, church groups and civic groups."

Stout and Bibb admitted that at the time they applied for service they did not know that food was served only to groups. They testified vaguely that Stout had mentioned that "we would like

4. With an exception not here pertinent. 42 U.S.C. § 2000a(b) (1).

5. The plaintiffs' case is not helped by the further finding that their white witness

Colton "attended the Lions Club oyster supper and was served along with others."

to register as an organization because we were interested in some organization meetings there, executive body," and "I went on to ask him about renting rooms there, and organizations, because we planned to use some organizations there." Stout admitted, however:

"Q. What organization did you tell Mr. Hurst you were interested in meeting there? A. I didn't name any specific organization.

"Q. Were you and Mr. Bibb sent there by any organization? A. No.

"Q. You and Mr. Bibb went there on your own? A. We did.

"Q. Did anybody send you? A. No.

"Q. Do you know of any other Negroes in the Bessemer area that asked you to go for them? A. No.

"Q. In other words, you were there strictly on your own? A. That's right."

Similarly, Bibb admitted:

"Q. But you did ask for an organization? A. I heard that.

"Q. What organization were you interested in? A. We didn't name an organization.

"Q. Did any organization send you there to arrange for the dining room? A. No."

It is clear that neither Stout nor Bibb represented any church group or civic group, which were the only kinds of organizations served at the Bessemer Y.M.C.A. Since no such organization, either wholly or partly composed of Negroes, has been refused service, no case or controversy has been presented as to discrimination in the service or selling of food, and the plaintiffs are not entitled to relief insofar as the selling of food is concerned. See 42 U.S.C. § 2000a (b) (2).

The judgment is therefore reversed and the cause remanded for the entry of a decree not inconsistent with this opinion.

Reversed and remanded with directions.