**In the Matter of SJA ENTERPRISES, INC., Debtor.**

**SJA ENTERPRISES, INC., Plaintiff,**

v.

**FIRST NATIONAL BANK OF CLEARWATER, Defendant.**

Bankruptcy No. 82–1721.
Adv. No. 82–1026.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 22, 1982.

Russell S. Bogue, III, Tampa, Fla., for plaintiff.

J. Paul Raymond, Clearwater, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the immediate matter under consideration is a complaint filed by SJA Enterprises, Inc. (SJA) suing the First National Bank of Clearwater (the Bank). SJA seeks an order directing an immediate turnover of certain promissory notes which are claimed to be properties of the estate. It also seeks an order permitting the use of cash collateral, to wit: the collection of payments by the makers of these notes.

The matter was presented on a basis of great emergency, therefore, it was set down for hearing on short notice at which time the record established largely by stipulation reveals the following relevant facts:

On March 18, 1982, SJA executed two promissory notes, one in the amount of $209,629.88 on which there is a principal balance of $204,629.88 plus accrued interest; the second in the amount of $13,559.99 with a principal balance of $10,059.29 plus accrued interest. Both notes were 90 day notes and became due on June 14, 1982. As part of the transaction, SJA executed a

security agreement and granted to the Bank a security interest in its inventory, fixtures, equipment, contract rights and accounts receivables. In addition, as additional collateral, SJA delivered to the Bank three promissory notes held by SJA. The first is a note executed by Robert Collins and his wife Maureen dated January 1, 1982 made in the principal amount of $90,000 and called for a monthly payment of $1,500.

The second is a note also executed by Mr. and Mrs. Collins on December 2, 1980 in the principal amount of $160,000 and called for a monthly debt service in the amount of $1,500.

The third note was executed by one Byron Cook on February 2, 1979 in the principal amount of $213,000 and called for a monthly debt service of $3,000.

Prior to the pledge, Mr. and Mrs. Collins made several payments to SJA, although it is not clear from the record in what amount. What is clear, however, is that with the exception of $4,000, no payments have been made to the Bank since the pledge of the notes. It further appears that SJA is in negotiations at this time with Mr. and Mrs. Collins and proposed a settlement of the two notes by reducing the principal and restructuring the monthly debt service. This transaction is not finalized and there is no evidence in this record that the Bank agreed to the restructuring of the obligations represented by the two notes. It further appears that Mr. Cook made all monthly payments to the Bank since the pledge with the exception of the month of November payment at which time he only paid one half of the payment and so far has paid nothing for the month of December.

The total outstanding indebtedness owed by SJA to the Bank is $214,689.17 plus accrued interest. It further appears that at least the face amount of the notes pledged as collateral represents an indebtedness of the makers in the amount of $320,000. According to the testimony of the president of SJA, its equipment has a value of $55,000, its furniture $22,000 and receivables from the franchise located in Houston, Texas,

$200,000, although it appears that this matter is currently in litigation, but according to the president of SJA will be settled shortly. This franchise is supposed to represent by way of franchise fees $5,000 in monthly income to SJA.

It is the contention of SJA that the three promissory notes are properties of the estate within the meaning of § 541 of the Code thus subject to the turnover by virtue of § 542 of the Code. In addition SJA contends that it is entitled to use the cash collateral to be derived from the collections on these notes by providing adequate protection on the following terms:

Payment of debt service according to the terms of the notes executed by SJA in favor of the Bank commencing 90 days from date granting a security interest on all post-petition contract rights and receivables.

It is the contention of the Bank that the notes, while initially pledged as additional collateral were endorsed by SJA to the Bank and became the absolute property of the Bank upon SJA's default on the underlying obligation. Thus, it is the Bank's position that the pledged notes no longer represent the properties of the estate, therefore, they are not subject to turnover.

It is also the contention of the Bank that in the event this Court finds the notes to be properties of the estate, the adequate protection offered by the Debtor is, in fact, not adequate and the Debtor should not be permitted to use the cash collateral.

The Court considered the respective contentions of the parties and is satisfied that the Bank's position is not supported by logic or by any controlling text or decisional law for the following reasons: First, the fact that SJA endorsed the three notes pledged as collateral for their obligation to the Bank, is without legal significance. "The general property in the pledge remains in the pledgor after default as well as prior thereto. The failure of the pledgor to pay his debt at maturity in no way affects the nature of the pledgee's rights concerning the property pledged, except that he be-

comes entitled to proceed to make the security available in the manner prescribed by law or by the terms of the contract, ..." 68 Am.Jur.2d *Secured Transactions,* § 62 (1973).

It is further noted that "such property rights generally exist in the pledgor, even where a negotiable instrument or commercial paper has been pledged." 68 Am.Jur., supra.

These propositions are further supported by the holding of Bankruptcy Court in and for the Western District of Kentucky, which held that assignment for security does not divest the debtor of all interest in accounts receivable. *First National Bank of Louisville v. Hurricane Elkhorn Coal Corp. II,* 8 B.C.D. 1243, 19 B.R. 609 (Bkrtcy. W.D.Ky.1982).

By way of analogy, the Bank contends that the interest of a mortgagor is extinguished after a foreclosure sale when the Clerk of the Court issues a Certificate of Title and that this event is legally equivalent to the endorsement of the notes in question and when coupled with the event of default on the underlying obligation, this effectively divested any interest of the Debtor in the pledged notes. Reliance on this analogy is misplaced because, as noted earlier, the collateral pledged retains the character of collateral in which the pledgor holds an interest even after default which cannot be extinguished unless the pledgee resorts to either legally or contractually based remedies provided for by applicable law or by agreement of the parties.

A separate final judgment will be entered in accordance with the foregoing.