## In re SUNSHINE–JR. STORES, INC. d/b/a Sunshine Supermarkets d/b/a Jr. Food Stores, Debtor.

### AMPLICON FINANCIAL, INC., Appellant,

v.

### SUNSHINE–JR. STORES, INC., Appellee.

No. 95–2025–CIV–T–17A.

United States District Court, M.D. Florida, Tampa Division.

June 28, 1996.

Janette Meredith Wester, Gaynor, Decker, Young, Malchon, Dickson, Schumaker, Tampa, FL, for appellant.

Marsha G. Rydberg, Rydberg, Goldstein & Bolves, P.A., Tampa, FL, for appellee.

### ORDER

KOVACHEVICH, Chief Judge.

This cause is before this Court on appeal from the October 18, 1995 Order Disallowing Claims Nos. 68 and 740 of Amplicon, Inc, (Dkt. No. 1886) of the United States Bankruptcy Court for the Middle District of Florida, entered by Bankruptcy Judge Thomas E. Baynes, Jr. The Bankruptcy Court disallowed Amplicon's Claims Nos. 68 and 740 (Dkt. No. 1869) pursuant to Rule 7052.

### STATEMENT OF THE CASE

There are five issues on appeal:

1. Whether the Bankruptcy Court erred in disallowing Amplicon's Proof of Claim No. 740.

2. Whether Amplicon had a reversionary interest in the leased property.

3. Whether the Bankruptcy Court erred in holding that the Parol Evidence Rule pro-

hibited the Court's consideration of other documents in interpreting the intent of Amplicon, Inc., and CIT/Equipment Financing, Inc.

4. Whether CIT compromised Amplicon's Reversionary Rights under the Settlement Agreement with Debtor.

5. Whether the interpretation of the Assignment by the Bankruptcy Court is unfair and inequitable.

## STANDARD OF APPELLATE REVIEW

Jurisdiction over appeals from the final judgment, orders and decrees of the Bankruptcy Court is vested in the Federal District Courts. 28 U.S.C. Section 158(a).

The District Court is bound by the findings of fact made by the Bankruptcy Court unless it determines them clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses. The burden is on the appellant to show that the Bankruptcy Court's findings are clearly erroneous. Federal Rules of Bankruptcy Procedure, Rule 8013; *In re Downtown Properties, Ltd.,* 794 F.2d 647 (11th Cir.1986).

"... [A] finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Appellant is entitled to an independent, de novo review of all conclusions of law and the legal significance accorded to the facts. *In re Owen,* 86 B.R. 691 (M.D.Fla. 1988).

## FACTS

On March 20, 1990, Appellant Amplicon Inc., ("Creditor"), as the lessor, and Appellee Sunshine–Jr. Stores ("Debtor"), as the lessee, entered into Lease No. OL–4367 regarding personal property being used in conjunction with Debtor's business operations. The Lease was subsequently renumbered as Lease No. OL–4096/2.

On April 9, 1990, Amplicon assigned the Lease to CIT/Equipment Financing, Inc., ("CIT"), through an Assignment of Lease (herein Assignment). The Assignment was without recourse, and provided as follows: 1) that Assignor assigned all of Assignor's rights and remedies under the lease; 2) Assignor granted to Assignee a security interest in all property covered by and described in the lease; and 3) Assignor gave express permission to Assignee to release or compromise or adjust any and all rights under the lease without notice to the Assignor.

After Debtor filed a Chapter 11 bankruptcy petition, Creditor filed its original Proofs of Claim seeking the Reversionary Interest Value of the equipment which accrued at the expiration of the Equipment Base Term Lease. CIT also filed its Proof of Claim for damages under the Equipment Lease. Thereafter, the Bankruptcy Court authorized the Debtor's rejection of the lease. As Assignee and first security interest holder, CIT took control of the leased property and sold it, retaining the proceeds.

On November 9, 1993, CIT amended its Proof of Claim to take into account the proceeds of the sale. Creditor also entered an amended Proof of Claim. The Debtor objected to CIT's Amended Proof of Claim No. 328, CIT's original Proof of Claim No. 376, Creditor's original Proof of Claim No. 68, and Creditor's Amended Proof of Claim No. 740. The Bankruptcy Court scheduled an evidentiary hearing on both objections. Prior to the evidentiary hearing, Debtor and CIT compromised the controversy between them.

Creditor claims that the Assignment only assigned rights to CIT to receive the payments due for the remaining Base Lease Term, thereby vesting in Creditor reversionary rights. Creditor further contends that CIT did not compromise Creditor's rights in the settlement agreement between Debtor and CIT because of a clause that specifically states: "It is expressly agreed that this settlement Agreement shall not effect or prejudice any rights or claims of Amplicon, Inc., to the extent they may exist, under Equipment Lease Agreement (OL–4096)." The Bankruptcy Court approved the Settlement Agreement between CIT and Debtor on Feb-

ruary 3, 1995. Creditor did not object to the settlement agreement.

Creditor's claims concerning the same lease that CIT compromised were considered by the Bankruptcy Court during the Final Evidentiary Hearing (Dkt. No. 1869). The Court disallowed the claims and made the following findings:

1) the Assignment from Creditor to CIT was without recourse;

2) the Assignment was not ambiguous;

3) CIT was authorized to, and did, compromise any and all claims against the Debtor regarding the Lease; and

4) any reversionary interest that Creditor may have had under the Lease did not arise because Debtor defaulted under the Lease before the base term expired.

The Bankruptcy Court issued an Order Sustaining and Disallowing Claims 68 and 740 of Amplicon, Inc. on October 18, 1995 pursuant to Rule 7052 of the Bankruptcy Code.

Appellant/Creditor, Amplicon, Inc. appeals to this Court, seeking a reversal of the Bankruptcy Court's judgment or, in the alternative, to remand with directions to the Bankruptcy Court for additional findings as to the intent of Amplicon and CIT in entering into the Assignment Agreement.

## ANALYSIS

### I. Whether the Bankruptcy Court erred in disallowing Amplicon's Proof of Claim No. 740.

Appellant/Creditor asserts that pursuant to the Assignment with CIT, it retained certain rights to the equipment including the residual or retained value inherent in the title to the equipment ("Residual Interest"). The Residual Interest forms the primary basis for Creditor's Amended Proof of Claim. (Dkt. No. 9 at 8). Creditor maintains that the Assignment was only for the rental payment stream for the Base Term Lease, and therefore did not alter Creditor's remaining end-of-term rights. However, Creditor did grant to CIT a security interest in the leased equipment to secure CIT's receipt of the assigned rental payments. (Dkt.

No. 9 at 9). Creditor claims damages pursuant to § 365(g)(1) of the Bankruptcy Code.

Appellee/Debtor asserts that upon default, CIT had the right to enforce its security interest in the collateral, thereby extinguishing any and all of Creditor's right, title and interest in the Leased Property. Also, Creditor assigned the Lease to CIT without recourse. By virtue of this provision, Creditor limited its liability to CIT. Creditor could lose its interest in the property if the Lessee defaulted because CIT could take the collateral to satisfy its default damages, but Creditor could not be personally liable to CIT for any deficiency that might arise by virtue of a default on the lease. The Debtor's court-authorized rejection of the Lease constituted a breach of, and default under, the Lease. 11 U.S.C. § 365(g). (Dkt. No. 11 at 5). Accordingly, upon CIT's exercising its default rights against Debtor, Creditor's interest in the Leased Property was extinguished.

The relevant part of the Final Evidentiary Hearing transcript as to the Bankruptcy Court's Findings of Fact and Conclusions of Law follows:

THE COURT: By the assignment of the lease without recourse, CIT had all the rights under the lease that supported the 18 quarterly payments. In other words, everything—they paid for it. They paid Amplicon this money to get this lease without recourse and they were entitled to not all the payments, but to enforce the lease through those payments. Every piece of language in there speaks to that. And Amplicon is off the hook as far as eating—in other words, returning money to CIT, if debtor fails to make the payments.

CIT, if there is a default, gets to exercise all its rights to get its money because it cannot get its money out of Amplicon because the lease is assigned without recourse.

(Dkt. No. 1869, Tr. 192–193).

THE COURT: There's also the ability of the lessor, Amplicon, to retain certain rights. I would suggest that the evidence and the documents support that there is some reversionary rights to Amplicon, but they are only those that arise when the contract has been—the lease has been

completed by the debtor. If debtor had assumed this lease, had made all the payments due, CIT was happy, then the debtor did not own the property at that time, Amplicon did, and Amplicon, of course, could enforce the rights of purchase, extension, replacement.

But that did not happen here. There was a breach. There was a default by debtor. And at that particular point there was an absolute right to compromise all the claims under a default. That meant the equipment value and everything that was owed and due. If there is an aggravation here—and I don't say there is one—it would be the fact if lessor, Amplicon, has a right to the equipment, then it would be against CIT. But I would dare say that CIT, as suggested, had a right to the equipment, to reduce it to proceeds, to get the money to reduce or to get its money due under the lease without recourse because at that time they still were in a particular situation where they could not go against Amplicon without recourse.

All this particular finding is consistent with the idea of the lease and the assignment of the lease, with the default paragraph 16 exercised by CIT, with the reversionary interest, of course, disappearing because there was a default and not a completion of the lease.

The front person—the entity up front was CIT. They had all the rights under the lease. That's what the assignment says. It was without recourse. They were capable of getting all the money. They were capable of getting all the equipment. They were able to compromise the entire claim as to the debtor. Any rights that—reversionary rights that were left over to Amplicon could not be exercised because they would only get it if the lease had been completed.

(Dkt. No. 1896, Tr. 193–196).

This Court concludes that the evidence and testimony presented in the Final Evidentiary Hearing clearly supports the Bankruptcy Court's decision in disallowing Amplicon's Proof of Claim No. 740. Creditor assigned the lease without recourse. Any reversionary rights that Creditor may have had were extinguished by CIT upon Debtor's default. The Bankruptcy Court did not err in disallowing Amplicon's Proof of Claim No. 740.

## II. Whether Amplicon had a reversionary interest in the leased property.

■ Creditor, as Assignor of the lease, contends that it held a reversionary interest in the leased property even when Debtor defaulted on the underlying lease and Assignee held a security interest in the collateral (Dkt. No. 9 at 10–12). Creditor further asserts that the Assignment was not "absolute" and, therefore, Creditor retained reversionary rights. Creditor maintains that the Assignment was a document typically used by CIT and Amplicon. Accordingly, pursuant to the principle of "course of dealing," this fact establishes that Amplicon retained the interest that any assignor retains in property it gives as security of a debt. (Dkt. No. 9 at 13).

Creditor relies on *The Matter of S.J.A. Enterprises, Inc.,* 25 B.R. 699 (Bankr. M.D.Fla.1982), as controlling precedent for these assertions. However, that case is factually distinguishable from the instant case. *S.J.A.* involved a pledgor of promissory notes as collateral who subsequently defaulted on the underlying obligation. The court in *S.J.A.* supported its finding by citing to *First National Bank of Louisville v. Hurricane Elkhorn Coal Corp. II,* 8 B.C.D. 1243, 19 B.R. 609 (Bkrtcy.W.D.Ky.1982), which held that assignment for security does not divest the debtor of all interests in the accounts receivable subject to the Bankruptcy Court's jurisdiction. Furthermore, *Elkhorn* involved a debtor's interest in its own accounts receivable and an agent's improper use of those accounts. The instant case pertains to a lease between Debtor and Creditor and an assignment of that lease between Creditor and CIT which assigned all rights and remedies. Creditor gave CIT a security interest in the collateral equipment to further enforce CIT's rights under the Assignment.

The Bankruptcy Court properly found that the Assignment unambiguously and expressly assigned Creditor's "rights and remedies under the Lease" to CIT and gave CIT "express permission" to release, compromise, or

adjust any and all rights against the Debtor, without prior notice to the Creditor.

Creditor has inaccurately stated that the court below ruled that Amplicon had no reversionary interests. (Dkt. No. 9 at 16). The Bankruptcy Court found "that any reversionary interest Amplicon might have had under the lease did not arise, because Debtor defaulted under the lease before the expiration of the initial lease term ..." (Dkt. No. 1886).

This Court concludes from the record that Creditor may have had a "reversionary interest" upon completion of the lease, but the interest never ripened due to the Debtor's default and CIT's pursuance of its legal remedies in a default situation.

**III. Whether the Bankruptcy Court erred in holding that the Parol Evidence Rule prohibited the Court's consideration of other documents interpreting the intent of Amplicon, Inc., and CIT/Equipment Financing, Inc.**

 Creditor asserts that the Assignment holds a latent ambiguity, and therefore extrinsic evidence should be admitted to explain the intent between Creditor and CIT. The longstanding rule in Florida is that, in the absence of an ambiguity, the actual language used in the contract is the best evidence of the intent of the parties and the plain meaning of the language controls. *Hamilton Construction Co. v. Board of Public Instruction,* 65 So.2d 729 (Fla.1953). Ambiguity exists where the contract language is reasonably susceptible to more than one construction. *Id.*

However, at the Final Evidentiary Hearing counsel for Creditor admitted that the document was unambiguous:

MS. WEBSTER: Your Honor, I'm trying to establish the conversations that led to the filing of the amended—the conversation—

THE COURT: What's the relevance of that?

MS. WEBSTER: To establish the parties' intent under the assignment.

THE COURT: No. No. No. No. Not without an ambiguity.

MS. WEBSTER: Well, Your Honor, then I guess we need to establish whether there is—to me there's no ambiguity.

THE COURT: Then there's no parol evidence. No showing of the intent, the intent comes from the document. (Dkt. No. 1886 Tr. 83 lines 7–22).

THE COURT: Well, don't forget. The nature of an ambiguity is in its language, not necessarily in its operation, unless there's a clear showing from the documents that one could not ascertain such. And sometimes the Court cannot fill in those voids.

(Dkt. No. 1869, Tr. 169 lines 8–13).

Creditor and CIT selected the wording of the Assignment. There was no ambiguity in the document as both Creditor's counsel and the Bankruptcy Court concede. Because the wording of the Assignment operated in a bankruptcy default situation differently than the parties might have thought does not cause a latent ambiguity. In this day and age, competent contracting parties that do not consider the possibility of a bankruptcy default occurring in the normal course of business are not realistically drafting the document. The occurrence of a bankruptcy default is entirely foreseeable.

 Creditor also contends that Debtor, as a stranger to the Assignment, lacks standing to assert the parol evidence rule. However, this issue was waived by Creditor's failure to raise it at trial. This Court will not consider this argument since it was not made to the Bankruptcy Court. An appellate court does not normally give consideration to issues not raised in the court below. *Hormel v. Helvering,* 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); *Kuo v. Walton,* 167 B.R. 677 (M.D.Fla.1994).

This Court concludes that the evidence supports the Bankruptcy Court's conclusion of law that parol evidence not be admitted to show the intent of Creditor and CIT.

## IV. Whether CIT compromised Amplicon's Reversionary Rights under the Settlement Agreement with Debtor.

 Creditor asserts that the Settlement Agreement between Debtor and CIT did not compromise Creditor's reversionary interests. Creditor relies on paragraph three (3) in the Stipulated Agreement which stated:

" . . . except it is expressly agreed that this Settlement Agreement shall not affect or prejudice any rights or claims of Amplicon, Inc. to the extent they may exist, under Equipment Lease Agreement (OL–4096)."

This agreement did not create any rights in Creditor because Creditor's reversionary interest or any other right only arose at the completion of the base term lease. Until expiration of the lease, CIT held all the rights and remedies. When Debtor defaulted, CIT exercised its rights to satisfy its damages under the law by both selling the equipment and later entering into a Settlement Agreement with Debtor.

Therefore, this Court supports the Bankruptcy Court's finding, based on the evidence, that the Settlement Agreement between Debtor and CIT ended any obligation that Debtor had under the Lease because any rights Creditor had against Debtor were foreclosed by the default.

## V. Whether the interpretation of the Assignment by the Bankruptcy Court is unfair and inequitable.

 As discussed above, the Assignment was unambiguous, with neither a patent or a latent ambiguity. Creditor assigned all its "rights and remedies" to CIT with express permission to compromise, release, adjust, or settle with Debtor absent notice to Creditor. Both the Lease and the Assignment contained default provisions. Under both, CIT had the right to remedies in a default situation. CIT had the right to secure its payments from Debtor in the event of default because Creditor bargained for an assignment without recourse.

This Court concludes that the Bankruptcy Court's ruling was not inequitable or unfair.

## CONCLUSION

This Court has carefully reviewed the Orders of Judge Thomas E. Baynes, Jr., the Briefs of both parties, the Transcript of the Final Evidentiary Hearing on Objection to Claim 68 and 740 of Amplicon, Inc., and other relevant documentation. Under the quoted standard of review, the Court finds that the Findings of Fact of the Bankruptcy Court are not clearly erroneous. The Bankruptcy Court's Conclusions of Law are sound. Accordingly it is

**ORDERED** that the Orders of the Bankruptcy Court be **AFFIRMED,** and the Clerk of the Court shall dismiss this Appeal.

**DONE and ORDERED.**