**Slip Op. No. 23-18**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SIEMENS GAMESA RENEWABLE ENERGY, | |
| Plaintiff, | |
| v. | |
| UNITED STATES, | **Before: Timothy C. Stanceu, Judge** |
| Defendant, | **Court No. 21-00449** |
| and | |
| WIND TOWER TRADE COALITION, | |
| Defendant-Intervenor. | |

**OPINION AND ORDER**

[Remanding an agency decision concluding an antidumping duty investigation of wind towers from Spain]

Dated:  February 16, 2023

*Daniel J. Cannistra*, Crowell & Moring LLP, of Washington, D.C., for plaintiff. With him on the briefs were *Simeon Yerokun* and *Michael K. Bowen*.

*Sara E. Kramer*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant.  With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Reginald T. Blades, Jr.*, Assistant Director.  Of counsel on the brief was *Shelby M. Anderson*, Senior Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

*Alan H. Price*, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor. With him on the brief were *Robert E. DeFrancesco, III* and *Laura El-Sabaawi*.

Stanceu, Judge: Plaintiff contests a decision that the International Trade

Administration, U.S. Department of Commerce ("Commerce" or the "Department")

issued in an antidumping duty ("AD") investigation of certain wind towers from Spain.

Concluding that Commerce did not conduct the investigation according to law, the

court issues an order for corrective action.

## I. BACKGROUND

### A. The Contested Decision

Commerce published the contested decision (the "Final Determination") as

*Utility Scale Wind Towers From Spain: Final Determination of Sales at Less Than Fair Value*,

86 Fed. Reg. 33,656 (Int'l Trade Admin. June 25, 2021) ("*Final Determination*").

Commerce incorporated by reference an explanatory "Issues and Decision

Memorandum."  *Issues and Decision Memorandum for the Final Affirmative Determination*

*in the Less-Than-Fair-Value Investigation of Utility Scale Wind Towers from Spain* (Int'l Trade

Admin. June 14, 2021), P.R. 149 ("*Final I&D Mem.*").[1]

The Final Determination pertains to imports of utility scale wind towers from

Spain (the "subject merchandise") that were made during a period (the "period of

investigation" or "POI") of July 1, 2019, through June 30, 2020.  In the Final

---

[1] Documents in the Joint Appendix (May 26, 2022), ECF Nos. 41 (public), 42 (conf.) are cited as "P.R. __" (for public documents).  All information disclosed in this Opinion and Order is information for which there is no claim for confidential treatment. Page numbers are references to the public Joint Appendix ("J.A."), ECF No. 41.

Determination, Commerce assigned an estimated dumping margin of 73.00% *ad valorem* to all imports of the subject merchandise.  After receiving, on August 9, 2021, notice of an affirmative determination of material injury by the U.S. International Trade Commission ("ITC"), Commerce published an antidumping duty order (the "Order"). *Utility Scale Wind Towers From Spain: Antidumping Duty Order*, 86 Fed. Reg. 45,707 (Int'l Trade Admin. Aug. 16, 2021).  In the Order, Commerce directed U.S. Customs and Border Protection to collect 73.00% cash deposits on all imports of subject merchandise, "effective on the date of publication in the Federal Register of the ITC's final affirmative injury determination."  *Id.*, 86 Fed. Reg. at 45,708.  The ITC had published its final injury determination on August 13, 2021.  *Utility Scale Wind Towers From Spain; Determination*, 86 Fed. Reg. 44,748.

## B. The Parties

Plaintiff Siemens Gamesa Renewable Energy ("Siemens Gamesa" or "SGRE") is a Spanish exporter of utility scale wind towers.  Defendant is the United States. Defendant-intervenor Wind Tower Trade Coalition is an association of U.S. producers of utility scale wind towers that was the petitioner in the antidumping duty investigation.[2]

---

[2] "The members of the Wind Tower Trade Coalition are Arcosa Wind Towers Inc. and Broadwind Towers, Inc."  *Utility Scale Wind Towers From Spain: Preliminary Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 17,354, 17355 n.6. (Int'l Trade Admin. Apr. 2, 2021) ("*Prelim. Determination*").

### C. Proceedings Before the Court

Plaintiff commenced this action on August 18, 2021.  Summons, ECF No. 1; Compl., ECF No. 8.  On January 14, 2022, plaintiff moved for judgment on the agency record under USCIT Rule 56.2.  Pl.'s Mot. for J. on the Agency R., ECF No. 27; Br. of Pl. Siemens Gamesa Renewable Energy in Supp. of its Mot. for J. on the Agency R., ECF No. 28 ("Pl.'s Br.").  Defendant and defendant-intervenor opposed plaintiff's motion. Def.'s Resp. to Pl.'s Mot. for J. upon the Agency R. (Apr. 14, 2022), ECF No. 36 ("Def.'s Br."); Wind Tower Trade Coalition's Resp. Br. (Apr. 14, 2022), ECF Nos. 37 (conf.), 38 (public) ("Def.-Int.'s Br.").  Plaintiff replied on May 12, 2022.  Reply Br. of Pl. Siemens Gamesa Renewable Energy in Supp. of its Mot. for J. on the Agency R., ECF No. 40. Plaintiff also requested an oral argument, Pl.'s Unopposed Mot. for Oral Argument (June 2, 2022), ECF No. 43, and submitted a "Notice of Supplemental Authority," Notice of Suppl. Authority (Sept. 23, 2022), ECF No. 44.  Defendant filed a response to this notice.  Def.'s Resp. to Pl.'s Notice of Suppl. Authority (Sept. 29, 2022), ECF No. 45.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c),[3] pursuant to which the court reviews actions commenced under section 516A of the Tariff Act of 1930, *as amended* ("Tariff Act"), 19 U.S.C. § 1516a,

---

[3] All citations to the United States Code herein are to the 2018 edition.

including an action contesting a final determination that Commerce issues to conclude an antidumping duty investigation.

In reviewing a final determination, the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *SKF USA, Inc. v. United States*, 537 F.3d 1373, 1378 (Fed. Cir. 2008) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

### B. The Department's Respondent Selection Decision

In response to petitions from the Wind Tower Trade Coalition, Commerce initiated antidumping duty investigations of utility scale wind towers from India, Malaysia, and Spain (the "Initiation Notice"). *Utility Scale Wind Towers From India, Malaysia, and Spain: Initiation of Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 73,023 (Int'l Trade Admin. Nov. 16, 2020).

Commerce published a preliminary affirmative less-than-fair-value determination for the Spain investigation in April 2021 (the "Preliminary Determination"). *Utility Scale Wind Towers From Spain: Preliminary Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 17,354 (Int'l Trade Admin. Apr. 2, 2021) ("*Prelim. Determination*"). Commerce incorporated by reference an

explanatory document, the "Preliminary Decision Memorandum." *Decision*

*Memorandum for the Preliminary Determination in the Less-Than-Fair-Value Investigation of*

*Utility Scale Wind Towers from Spain* (Int'l Trade Admin. Mar. 29, 2021), P.R. 134 ("*Prelim.*

*Decision Mem.*"). Commerce described its methodology in these documents.

Commerce explained that in preparing to limit the respondents it would select

for individual examination, it sent "Quantity and Value" ("Q&V") questionnaires to

nineteen known exporters and producers of the subject merchandise, thirteen of which

filed responses. *Id.* at 2, J.A. at 188. On December 23, 2020, five weeks after publication

of the Initiation Notice, Commerce announced that, due to its resource constraints and

the complexity of the investigation, it would examine individually only one respondent

(i.e., a "mandatory respondent") in the investigation. Commerce informed interested

parties of this decision in a "Respondent Selection Memorandum." *Less-Than-Fair-Value*

*Investigation of Utility Scale Wind Towers from Spain: Respondent Selection* (Int'l Trade

Admin. Dec. 23, 2020), P.R. 106 ("*Respondent Selection Mem.*"). In the Respondent

Selection Memorandum, Commerce stated as follows:

> Commerce reviewed the Q&V questionnaire responses for each
> exporter or producer. After carefully considering these Q&V
> questionnaire data, our resource constraints, as well as the complexity of
> the issues involved in the investigation, we find that the office responsible
> for this investigation has the resources to examine individually one
> mandatory respondent.

*Id*. at 6, J.A. at 144. Commerce announced, further, that the mandatory respondent

would be Vestas Eolica S.A.U. ("Vestas Eolica" or "Vestas"). *Id*. ("Based on our analysis

of the Q&V questionnaire data submitted by exporters and producers, the exporter/producer with the largest value of entries of subject merchandise is Vestas Eolica." (footnote omitted)); *id*. at 7, J.A. at 145 (approving the choice of the single mandatory respondent).

After several communications with Commerce, Vestas Eolica and its affiliates informed Commerce on January 28, 2021 that "Vestas Eolica will not continue to participate in the antidumping duty investigation." *Utility Scale Wind Towers from Spain: Notice of Decision to Not Participate in the Investigation* at 1, P.R. 124.

## C. The Department's Rejection of Siemens Gamesa's Request to Be a Mandatory Respondent

Siemens Gamesa filed a request to be a mandatory respondent on February 17, 2021. *Less-Than-Fair-Value Investigation of Utility Scale Wind Towers from Spain: Request for Mandatory Respondent Selection*, P.R. 128. In its letter, Siemens Gamesa stated: (1) that it was timely in responding to the Department's Quantity and Value questionnaire, (2) that Commerce had stated in its "Respondent Selection Memorandum" that it had the resources to examine individually one mandatory respondent, and (3) that 40 days remained before the deadline for issuance of a preliminary determination, a deadline Commerce has discretion to extend. *Id*. at 1–3, J.A. at 164–66. Noting that Commerce already had found it had resources to examine one mandatory respondent and that the selected mandatory respondent was no longer participating, Siemens Gamesa added that "as with the question of time, there should be no concern as to Department

resources."  *Id*. at 3, J.A. at 166.  Siemens Gamesa requested that Commerce promptly issue it an antidumping duty questionnaire.  *Id*. at 2, J.A. at 165.

The petitioner, the Wind Tower Trade Coalition, opposed Siemens Gamesa's request.  *Utility Scale Wind Towers From Spain: Response to SGRE's Request for Additional Mandatory Respondent Selection* (Feb. 19, 2021), P.R. 129.  The Wind Tower Trade Coalition argued, *inter alia*, that granting Siemens Gamesa's request would unfairly prejudice it by unduly impeding the investigation, the request having been submitted "56 days after the original respondent selection memorandum in this case, and only 40 days before the preliminary determination."  *Id*. at 1, J.A. at 173.  Maintaining that there was insufficient time to conduct a complete investigation with a new respondent, and pointing to possible delay in the requirement to post cash deposits, the Wind Tower Trade Coalition argued that "[s]electing a new respondent at this late stage would deprive Petitioner of this expedient relief."  *Id*. at 2–3, J.A. 174–75.  The Wind Tower Trade Coalition argued, further, that Siemens Gamesa "waited nearly *three weeks* after Vestas' notification of non-participation to submit its request" and also that it "had the opportunity to request voluntary respondent status and submit questionnaire responses, but it chose to waive this status."  *Id*. at 7, J.A. at 179 (citing 19 U.S.C. § 1677m(a)(1)).

Commerce rejected Siemens Gamesa's mandatory respondent request on March 5, 2021.  *Utility Scale Wind Towers from Spain: Request to Select Replacement*

*Mandatory Respondent*, P.R. 132.  Commerce gave as reasons for the rejection that

"SGRE's request has come late in the proceeding, only six weeks before the scheduled

date for issuing the preliminary determination," that "SGRE did not make its request

until several weeks had passed after Vestas withdrew from participation in this

investigation on January 28, 2021," and that "SGRE did not seek to participate as a

voluntary respondent; had it done so, it would have provided Commerce with a

questionnaire response for SGRE at a far earlier date."  *Id*. at 1, J.A. at 184.

**D.  The Department's Assignment of 73.00% Preliminary Dumping Margins to Seven Respondents and its Selection of a Preliminary 73.00% "All-Others" Rate**

In the Preliminary Determination, Commerce preliminarily assigned a rate of

73.00% *ad valorem* to Vestas Eolica based on "facts otherwise available" determined

under 19 U.S.C. § 1677e(a) and an "adverse inference" determined under 19 U.S.C.

§ 1677e(b), based on its finding that Vestas Eolica failed to cooperate by not acting to the

best of its ability when it did not respond to the Department's antidumping duty

questionnaire.[4]  *Prelim. Determination*, 86 Fed. Reg. at 17,355.  Commerce determined

that six other companies failed to cooperate by not acting to the best of their abilities,

based on findings that these six companies failed to respond to the Department's

---

[4] When applying "facts otherwise available" under 19 U.S.C. § 1677e(a) together with an adverse inference under *id.* § 1677e(b), Commerce refers to "adverse facts available," or "AFA." When the entire margin is determined in this way, Commerce refers to "total AFA."

Quantity and Value questionnaire.[5]  Commerce assigned each of these six companies a preliminary estimated antidumping duty margin of 73.00%.  *Id*.  Commerce proceeded to assign the rate of 73.00% as a preliminary estimated "all-others" rate to the exporters and producers of the subject merchandise that it did not individually examine.  *Id*.  Commerce explained the derivation of its preliminary estimated all-others rate as follows:

> In the Petition, the Wind Tower Trade Coalition (the petitioner) provided only one dumping margin, which was based on a price-to-constructed-value comparison.  Therefore, in the absence of another weighted-average dumping margin on the record of this investigation, as the all-others rate, we are preliminarily assigning the sole dumping margin in the *Initiation Notice*, which is 73.00 percent.

*Id*. (footnotes omitted).

### E.  The Department's Assignment of 73.00% Estimated Dumping Margins to Six Respondents and its Selection of a 73.00% Estimated "All-Others" Rate

For the Final Determination, Commerce adopted essentially the same analysis it had used for the Preliminary Determination and assigned 73.00% final estimated dumping margins applicable to all exporters and producers.  *Final Determination*, 86 Fed. Reg. at 33,657.  Based on "total AFA," Commerce assigned a final estimated dumping margin of 73.00% to the sole mandatory respondent, Vestas Eolica.

---

[5] The six companies Commerce preliminarily found not to have responded to the Quantity and Value questionnaire were Acciona Windpower S.A., Gamesa Energy Transmission, Haizea Wind Group, Kuzar Systems, S.L., Proyectos Integrales y Logisticos S.A.A., and Windar Renovables (an affiliate of Siemens Gamesa Renewable Energy ("Siemens Gamesa")).  *Prelim. Determination*, 86 Fed. Reg. at 17,355 n.5.

Commerce used total AFA to assign this same estimated margin to five of the six companies it preliminarily had determined not to have cooperated by failing to respond to the Quantity and Value questionnaire.[6]

The Final Determination made no change to the Department's preliminary determination or analysis for the "all-others" rate of 73.00%. *Id.* ("As discussed in the *Preliminary Determination*, Commerce based the estimated weighted-average dumping margin for all other producers and exporters on the only dumping margin alleged in the Petition, pursuant to section 735(c)(5)(B) of the Act [19 U.S.C. §1673d(c)(5)(B)]. We made no changes to this rate for this final determination.").

### F. Plaintiff's Claim and Supporting Grounds

Stated in summary, plaintiff's claim is that Commerce unlawfully assigned it the rate of 73.00% in the investigation. It asserts, in effect, two grounds in support of its claim.

---

[6] Commerce concluded that one of the six companies it preliminarily found to have failed to cooperate by not responding to the Quantity and Value questionnaire, Proyectos Integrales y Logisticos S.A.A. ("Proinlosa"), "attempted to contact Commerce in a timely manner regarding the Q&V questionnaire in an effort to timely submit its Q&V questionnaire response. Accordingly . . . we no longer find that application of total AFA is appropriate with respect to Proinlosa." *Utility Scale Wind Towers From Spain: Final Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 33,656, 33,657 (Int'l Trade Admin. June 25, 2021). Because Commerce assigned a final estimated "all-others" margin of 73.00%, the redetermination as to Proinlosa was of no practical significance.

First, Siemens Gamesa argues that Commerce unlawfully refused to examine it individually during the investigation. Plaintiff submits that following notification that Vestas Eolica would no longer participate in the investigation, Siemens Gamesa, "which was initially identified by Commerce as the second largest exporter, thus became the largest and only remaining fully participating exporter of subject merchandise in this investigation." Pl.'s Br. 6. Plaintiff characterizes the Department's reasoning for denying its request, based on "time and resources," as "excuses" that are not supported by the record facts. *Id.* at 8–9. It argues that Commerce, freed of the obligation to investigate Vestas, had the resources to investigate Siemens Gamesa individually and had sufficient time to do so, in particular because it had authority to extend the deadlines for the preliminary and final determinations. *Id*. at 9 ("Commerce had both the authority and obligation to extend one or both of the determination deadlines."). Quoting 19 U.S.C. §§ 1677f-1(c)(1)–(2), plaintiff argues, further, that Commerce, which was under a general obligation to determine individual dumping margins for each known exporter, was required at least to investigate individually a "reasonable number of exporters," Pl.'s Br. 9, which Commerce, by refusing to investigate Siemens Gamesa individually, failed to do. According to plaintiff, "Commerce is not permitted to impose an AD order where there was no examination of a single exporter, given that another participating exporter remained ready and willing for such an examination." *Id.* at 18.

Second, plaintiff points to the statutory provisions governing the setting of an "all-others" rate in an antidumping duty investigation. Siemens Gamesa argues that "Commerce's decision in this investigation to assign a rate to all parties based solely on AFA, and not a single exporter's data, was directly contrary to the text" of 19 U.S.C. § 1673d(c)(5). *Id*. at 29. According to plaintiff, the Department's use of "a single, untested margin alleged in the Petition as total AFA," *id.* at 30, "in the absence of an individual examination of a single exporter, is not representative of all other exporters," *id.* at 31.

**G.  The Statutory Requirement to Select More Than One Respondent for Individual Investigation**

In its Notice of Supplemental Authority, Siemens Gamesa directed the court's attention to the precedential decision of the Court of Appeals for the Federal Circuit ("Court of Appeals" or "CAFC") in *YC Rubber Co. (North America) LLC v. United States*, No. 21-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022) ("*YC Rubber*"), which was decided after the briefing in this case was completed. Plaintiff states in its notice that "[s]pecifically, the CAFC vacated and remanded the CIT's decision, concluding that the U.S. Department of Commerce erred in restricting examination to only one exporter/producer." Notice of Suppl. Authority (Sept. 23, 2022), ECF No. 44.

*YC Rubber* interpreted a statutory provision, 19 U.S.C. § 1677f-1(c)(2), in a way that was contrary to the statutory interpretation Commerce applied in this case to limit its individual examination to a single respondent. The Court of Appeals held that

§ 1677f-1(c)(2), in providing that Commerce "may determine the weighted average

dumping margins for *a reasonable number* of exporters or producers" (emphasis added),

is not satisfied when Commerce decides to examine individually only one exporter or

producer: "We conclude that a 'reasonable number' is generally more than one."

*YC Rubber*, 2022 WL 3711377, at *4. The Court of Appeals did not accord deference to

the Department's contrary interpretation of § 1677f-1(c)(2) under *Chevron U.S.A., Inc. v.*

*Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). After mentioning the government's

argument that "Commerce's position that it suffices to review only one respondent

warrants *Chevron* deference," the Court of Appeals concluded "that Commerce's

position is contrary to the statute's unambiguous language." *YC Rubber*, 2022 WL

3711377, at *3.

While there are some factual differences between the administrative review of

the antidumping duty order that was at issue in *YC Rubber* and the antidumping duty

investigation at issue in this case, those differences do not support an argument that the

holding in *YC Rubber*, which turned on a question of statutory interpretation, is

inapplicable here. To the contrary, during this investigation Commerce interpreted

§ 1677f-1(c)(2)—the same statutory provision interpreted in *YC Rubber*—to allow it to

investigate individually only one exporter or producer. *See Respondent Selection Mem.*

at 5, J.A. at 143 ("Further, section 777A(c)(2) of the Act [19 U.S.C. § 1677f-1(c)(2)] does

not require Commerce to meet a minimum threshold in determining the number of

mandatory respondents.").  That is the very interpretation the Court of Appeals

considered and rejected in *YC Rubber*, based on the unambiguous language of

§ 1677f-1(c)(2).

In this case, Commerce announced its decision to examine individually only one

respondent in the Respondent Selection Memorandum and never departed from that

decision throughout the conduct of the entire investigation.  The Department's

assigning the 73.00% rate to Siemens Gamesa was a result of that unlawful decision,

which, when viewed according to the holding *YC Rubber*, was not based on a

permissible interpretation of 19 U.S.C. § 1677f-1(c)(2).  Therefore, the court finds merit

in plaintiff's challenge to the Department's respondent selection method.

In its response to plaintiff's Notice of Supplemental Authority, defendant did not

argue that the holding in *YC Rubber* is inapplicable to this case.  Defendant responded

only by informing the court that the mandate in the case "has not yet issued and the

time to seek further review has not expired.  The Government has not yet determined

whether it will seek further review."  Def.'s Resp. to Pl.'s Notice of Suppl. Authority

(Sept. 29, 2022), ECF No. 45.  The mandate in *YC Rubber* has now issued.  CAFC

Mandate in Appeal # 21-1489 (Jan. 18, 2023).

## H.  The Obligation to Determine the All-Others Rate by a "Reasonable Method"

The court also agrees with plaintiff's argument that Commerce failed to

determine the all-others rate by a "reasonable method" as is expressly required by

19 U.S.C. § 1673d(c)(5)(B).  The all-others rate Commerce chose because it was "the sole dumping margin alleged in the Petition," *Final Determination*, 86 Fed. Reg. at 33,657, was calculated solely by the petitioner, was not determined by Commerce according to the sales of any individually-investigated respondent, and was not demonstrated by Commerce to be representative of any rate that could have been attributed to the respondents that were not selected for individual examination.  In the guise of an actual antidumping duty investigation, Commerce merely took a rate advocated by the petitioner and applied it to all exporters and producers of the subject merchandise.

The Tariff Act applies a "general rule" under which "the estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins, and any margins determined entirely under section 1677e of this title."  19 U.S.C. § 1673d(c)(5)(A).  In the investigation, Commerce put itself in a position under which it could not apply this general rule.  Having relied upon "total AFA" under 19 U.S.C. § 1677e to determine a margin for Vestas Eolica, the only exporter or producer it selected for individual investigation, Commerce had no estimated weighted average dumping margins that it could average according to § 1673d(c)(5)(A).  Therefore, the agency left itself only with the "exception" to the general rule, which the Tariff Act sets forth as follows:

> If the estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or de

minimis margins, or are determined entirely under section 1677e of this title, the administering authority may use *any reasonable method* to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated.

19 U.S.C. § 1673d(c)(5)(B) (emphasis added).  The method Commerce chose was not reasonable.

The Court of Appeals addressed a highly similar situation in *Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) ("*Yangzhou Bestpak*").  The case held that Commerce must use a method that is reasonable based on substantial record evidence in determining an all-others rate under 19 U.S.C. § 1673d(c)(5)(B), even when following the "averaging" methodology expressly permitted by that provision.  In *Yangzhou Bestpak*, Commerce calculated an all-others rate in an antidumping duty investigation by taking a simple average of a 247.65% "AFA China-wide rate," which Commerce assigned to one of two mandatory respondents that failed to cooperate in the investigation, with a de minimis rate assigned to the other, cooperating mandatory respondent, resulting in a 123.83% "all-others" estimated dumping margin that Commerce applied to the unexamined respondents, including plaintiff Yangzhou Bestpak Gifts & Crafts Co., Ltd.  *Id.*, 716 F.3d at 1375.  The Court of Appeals held that the record lacked evidence to demonstrate the reasonableness of the 123.83% all-others rate.  "This case is peculiar in that Commerce identified only two significant exporter/producers, yet one was assigned a *de minimis*

dumping margin while the other was assigned the highest possible AFA China-wide margin." *Id.*, 716 F.3d at 1380. "The result is not only limited and frustrating, as the Court of International Trade described it, but is also unreasonable." *Id.* In this case, Commerce created for itself a situation that was even more limited and peculiar.

Defendant and defendant-intervenor argue that the court should deny relief on plaintiff's argument because, they assert, plaintiff failed to exhaust its administrative remedies by not raising its objection to its being assigned the all-others rate in the case brief it submitted to Commerce during the investigation. According to defendant, "the only mention of the all-others rate in SGRE's case brief is a statement that the 'representativeness of investigated exporters is the essential characteristic that justifies an "all-others" rate.'" Def.'s Br. 31 (citing SGRE's "Case Brief," *Antidumping Duty Investigation of Utility Scale Wind Towers from Spain: SGRE's Case Brief* at 6 (May 3, 2021), P.R. 141 ("*Case Brief*")). Defendant-intervenor maintains that plaintiff "never argued that the agency's calculation of the all others rate was contrary to 19 U.S.C. § 1673d, as it now argues at length in its brief to the Court." Def.-Int.'s Br. 25.

The court does not agree that plaintiff failed to exhaust its administrative remedies for its argument that Commerce unlawfully assigned it the 73.00% all-others rate. In quoting a sentence from the Case Brief, defendant omitted an introductory citation to *Albemarle Corp. v. United States*, 821 F.3d 1345, 1353 (Fed. Cir. 2016), which rejected a separate rate determined by Commerce under 19 U.S.C. § 1673d(c)(5)(B)—the

statutory provision at issue here—as unreasonable on the record evidence. *See*

*Albemarle*, 821 F.3d at 1355–56. Further, in identifying what defendant considered to be

the "only mention" of the argument addressed to the all-others rate, defendant

overlooked another reference to the all-others rate that appeared later in the Case Brief.

Identifying the result of the Department's rejecting the request to be a mandatory

respondent, the Case Brief specifically objected that "the Department has concluded

that it would be preferable to irreversibly issue an order and base the dumping rate *for*

*all exporters* of wind towers from Spain on adverse facts available instead." *Case Brief*

at 7 (emphasis added). Thus, the Case Brief not only objected to the unreasonableness

of the Department's all-others rate but did so on the specific grounds that it was

unrepresentative and based entirely on "adverse facts available."

Defendant also argues that, the exhaustion issue aside, "SGRE's arguments are

unpersuasive" because "SGRE is incorrect that Commerce applied AFA to calculate the

all-others rate." Def.'s Br. 32. Defendant-intervenor makes the same argument.

Def.-Int.'s Br. 26. This argument is also unconvincing.

Defendant quotes the Preliminary Decision Memorandum, which stated that

"there are no additional dumping margins available to include in the all-others rate"

and that "Commerce is using the dumping margin alleged in the Petition of 73.00

percent as the all-others rate," Def.'s Br. 32 (quoting *Prelim. Decision Mem*. at 9–10), but

undeniably, this was the same rate Commerce applied as "total AFA" to the only

individually investigated respondent.  And whether labeled an "AFA" rate or not, the 73.00% all-others rate was not shown by Commerce to be a reasonable rate for cooperative respondents that were not individually examined.  *See Yangzhou Bestpak*, 716 F.3d at 1380.  Commerce obtained it from the petition rather than from a "reasonableness" analysis Commerce itself conducted based on its own review of record evidence.  Congress entrusted Commerce with the responsibility to conduct an antidumping duty investigation, and to assign individual and, if necessary, all-others rates, according to the detailed requirements set forth in the Tariff Act.  Here, it was not lawful for Commerce to evade that investigative responsibility by outsourcing the critical determination to the petitioner.

## I.  Siemens Gamesa's Decision Not to Seek Voluntary Respondent Status

Defendant also attempts to cast the blame upon Siemens Gamesa for the "paucity of information" with which Commerce could determine an all-others rate:

> The paucity of information on the record due to Vestas's non-cooperation, and SGRE's decision not to seek voluntary respondent status and to timely submit an antidumping questionnaire response, ultimately led to the AFA and the all-others rate being the same, but that does not mean that Commerce applied AFA to SGRE and other exporters who responded to Q&V questionnaires.

*Id*. at 32–33 (footnote omitted).  This argument is meritless.

Siemens Gamesa was under no obligation to request to be a voluntary respondent (or, for that matter, to request to be a substitute mandatory respondent) in order to exhaust its administrative remedies and thereby preserve its right to contest the

Department's assigning it the 73.00% rate as an all-others rate, as any respondent adversely affected by that rate potentially could have done. The inadequacy of the 73.00% all-others rate, like the "paucity" of substantial evidence to support it, resulted from the Department's unlawful conduct of the investigation, not from any failure of Siemens Gamesa to participate in that investigation as it was required to do.

The court concludes, further, that Siemens Gamesa's decision not to seek voluntary respondent status during the investigation, even if characterized as a failure to exhaust administrative remedies, does not preclude plaintiff's arguing before the court that the Department's respondent selection method was unlawful. Siemens Gamesa contested that method during the investigation, and its position later was sustained by the holding in *YC Rubber*. Courts long have recognized "intervening legal authority" as an exception to the exhaustion requirement. *See Hormel v. Helvering*, 312 U.S. 552 (1941). Here, there has been an intervening judicial interpretation of existing law "which if applied might have materially altered the result." *Id.*, 312 U.S. at 558–59 (footnote omitted). As discussed above, the CAFC's opinion in *YC Rubber* interpreted a statutory provision, 19 U.S.C. § 1677f-1(c)(2), in a way that was directly contrary to the statutory interpretation Commerce applied in this case to limit its individual examination to a single respondent. Thus, even if it were presumed, *arguendo*, that seeking voluntary respondent status would not have been futile despite the Department's prior statement in the Respondent Selection Memorandum that only

one respondent would be examined individually, another exception to the exhaustion requirement applies to allow Siemens Gamesa to assert the "respondent selection" argument it raises before the court.[7]

### III. CONCLUSION AND ORDER

The assignment of the 73.00% rate to Siemens Gamesa was unlawful because it resulted from an unlawful respondent selection method, Commerce having limited its individual examination to a single respondent, contrary to 19 U.S.C. § 1677f-1(c)(2) as interpreted in *YC Rubber*. The 73.00% rate also was unlawful as an "all-others" rate because it was not determined according to a reasonable method as required by 19 U.S.C. § 1673d(c)(5)(B).

On remand, Commerce must correct the error it made when it decided, contrary to 19 U.S.C. § 1677f-1(c)(2), to examine individually only one respondent and, having also decided to proceed according to largest export volume under 19 U.S.C. § 1677f-1(c)(2)(B), not to examine Siemens Gamesa in particular. By the time Commerce decided, on March 5, 2021, not to investigate Siemens Gamesa individually, Commerce already had reached the decision, on December 23, 2020, to proceed under 19 U.S.C.

---

[7] In *YC Rubber Co. (North America) LLC v. United States*, No. 21-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022) at *2 ("*YC Rubber*"), the Court of Appeals for the Federal Circuit ("Court of Appeals" or "CAFC") noted that the agency stated after the withdrawal of one of the mandatory respondents that no exporter or producer subject to the administrative review requested voluntary respondent status. The CAFC's opinion does not address the question of exhaustion of administrative remedies as to this issue.

§ 1677f-1(c)(2)(B), which is directed to largest export volume, in conducting respondent selection. *See Respondent Selection Mem.* The agency decision to proceed by largest export volume under § 1677f-1(c)(2)(B) is not challenged in this litigation and is, therefore, final. Plaintiff challenges instead the Department's subsequent decision not to examine Siemens Gamesa individually as the largest remaining exporter, and that unlawful decision must be remedied by an individual investigation of Siemens Gamesa during the remand proceeding the court is ordering. The court is allowing 90 days for this investigation but will consider a motion for a longer time period upon a showing of good cause.

Therefore, upon consideration of plaintiff's Rule 56.2 motion and all papers and proceedings had herein, and upon due diligence, it is hereby

**ORDERED** that Plaintiff's Motion for Judgment on the Agency Record (Jan. 14, 2022), ECF No. 27, be, and hereby is, granted; it is further

**ORDERED** that Commerce shall submit a redetermination in compliance with this Opinion and Order (a "Remand Redetermination") within 90 days of the date of issuance of this Opinion and Order; it is further

**ORDERED** that plaintiff and defendant-intervenor may submit comments on the Remand Redetermination within 30 days of the date of submission of the Remand Redetermination to the court; it is further

**ORDERED** that defendant may submit a response to the comments of plaintiff and defendant-intervenor within 14 days of the date of the last comment submission; and it is further

  **ORDERED** that Plaintiff's Unopposed Motion for Oral Argument (June 2, 2022), ECF No. 43, be, and hereby is, denied.

             /s/ Timothy C. Stanceu   
             Timothy C. Stanceu
             Judge

Dated: February 16, 2023
    New York, New York